**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
FINCO PRIME CONSULTING CORPORATION,
SWEETPEA VENTURES INC., MJT PARK              No. 22-cv-00952 (DLC)
INVESTORS, INC., MICHAEL TOPOREK, AND
MATTHEW LIPMAN, derivatively on behalf of
BROOKSTONE PARTNERS MOROCCO S.A.,

                     Plaintiffs,

          -vs-

OMAR BELMAMOUN,

                 Defendant,

          -and-

BROOKSTONE PARTNERS MOROCCO S.A.,

                 Nominal Defendant.
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## VERIFIED COMPLAINT

GOLENBOCK EISEMAN ASSOR
  BELL & PESKOE LLP
Michael. S. Devorkin
James Paulose (*SDNY admission pending*)
711 Third Avenue
New York, NY 10017
Tel: (212) 907-7300

*Counsel for Defendant Omar Belmamoun*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF ARGUMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

     1.     The Parties ............................................................................... 3

     2.     The Investment and BPM's Demand for Records ................................... 3

     3.     The New York Disclosure Litigation ("New York Litigation 1") ........................ 4

     4.     Moroccan Litigation 1 ............................................................... 6

     5.     Plaintiffs' Moroccan Litigations 2-7 ................................................ 8

     6.     Plaintiffs' Other New York Litigation .............................................. 9

     7.     There Is No Merit in the Governance Claims ...................................... 9

ARGUMENT ..................................................................................................... 10

I.     THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER
BELMAMOUN FOR THE CLAIMS AT ISSUE; BPM HAS NOT BEEN
SERVED. ................................................................................................. 10

II.    THIS COURT LACKS JURISDICTION. ...................................................... 12

III.   THIS IS AN INCONVENIENT FORUM. ..................................................... 13

     A.     Morocco is an Adequate Alternative Forum.................................... 14

     B.     Plaintiffs' Choice of Forum is Not Controlling Here. ........................ 15

     C.     The Private and Public Interest Factors Weigh in Favor of Morocco. ................ 16

     D.     The Court Should Abstain. ........................................................ 17

IV.   THE COURT SHOULD DISMISS UNDER THE FIRST-FILED RULE...................... 18

     A.     The Principles of the First-Filed Rule .......................................... 19

     B.     Plaintiffs First-Filed Pending Moroccan Actions and are Bound by
Their Choices. ...................................................................... 19

V.    THE COMPLAINT IS BARRED BY CLAIM AND ISSUE PRECLUSION................ 21

A.      The Standards........................................................................................... 21

B.      Plaintiff Shareholders and FinCo are in Privity, and Each has Already
        Lost in the Moroccan or New York Litigations...................................... 22

VI.     THE STATUTE OF LIMITATIONS HAS EXPIRED. .................................................... 24

VII.    PLAINTIFFS ARE NOT PROPER DERIVATIVE PLAINTIFFS, BECAUSE
        THEY HAVE CONFLICTS OF INTEREST WITH BPM. ............................................ 25

VIII.   FINCO HAS NO STANDING. ..................................................................................... 26

IX.     THE COMPLAINT FAILS TO STATE A CLAIM........................................................ 27

X.      THE COMPLAINT IS BARRED BY THE SUBSTANTIVE PROTECTIONS
        OF NEW YORK'S ANTI-SLAPP STATUTE................................................................ 29

CONCLUSION ........................................................................................................................ 30

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*ALP, Inc. v. Moskowitz*,
204 A.D.3d 454 (1st Dep't 2022) ..........................................................................25

*AMPA Ltd. v. Kentfield Capital LLC*,
No. 00-cv-0508 (NRB), 2001 WL 204198 (S.D.N.Y. Mar. 1, 2001) ......................11

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
762 F.2d 205 (2d Cir. 1985)...................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................27

*In re Bank of New York Derivative Litigation*,
320 F.3d 291 (2d Cir. 2003)....................................................................................27

*Bartfield v. Murphy*,
578 F.Supp.2d 638 (S.D.N.Y. 2008)..................................................................12, 27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................27

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212 (2d Cir. 2004)......................................................................................1

*Buhannic v. American Arbitration Association*,
18 Civ. 2430 (ER), 2019 WL 4735005 (S.D.N.Y. Sept. 27, 2019) ........................27

*California Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)................................................................................................29

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
370 F.3d 234 (2d Cir. 2004)....................................................................................14

*Carlström v. Livförsäkring*,
19cv11569, 2020 WL 7342753 (S.D.N.Y. Dec. 14, 2020)................................16, 17

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
No. 10 CIV. 6457 SHS, 2014 WL 1087960 (S.D.N.Y. Mar. 19, 2014) ..................19

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)......................................................................................10

*China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*,
 882 F. Supp. 2d 579 (S.D.N.Y. 2012)...................................................................11

*Christ v. Lake Erie Distributors, Inc.*,
 51 Misc. 2d 811 (Sup Ct, Erie County 1966), *order aff'd on other grounds*, 28
 A.D.2d 817 (4th Dep't 1967), *and order aff'd*, 28 A.D.2d 825 (4th Dep't
 1967) ..........................................................................................................................24

*Coleman v. Grand*,
 523 F.Supp.3d 244 (E.D.N.Y. 2021) ......................................................................30

*Comm/Tech Communication Technologies, Inc. v. Wireless Data Systems, Inc.*,
 163 F.3d 149 (2d Cir. 1998)......................................................................................10

*Cylich v. Riverbay Corp.*,
 74 A.D.3d 646 (1st Dep't 2010) ................................................................................25

*Doe v. Columbia University*,
 551 F.Supp.3d 433 (S.D.N.Y. 2021)...................................................................24, 26

*Doyle v. Goodnow Flow Association Inc.*,
 193 A.D.3d 1309 (3d Dep't 2021) .............................................................................24

*EDP Med. Computer Sys., Inc. v. United States*,
 480 F.3d 621 (2d Cir. 2007).......................................................................................21

*Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*,
 522 F.3d 271 (2d Cir. 2008).......................................................................................19

*Esheva v. Siberia Airlines*,
 499 F.Supp.2d 493 (S.D.N.Y. 2007).........................................................................17

*Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*,
 414 F.3d 325 (2d Cir. 2005).......................................................................................15

*Giannone v. York Tape & Label, Inc.*,
 548 F.3d 191 (2d Cir. 2008).......................................................................................23

*Hoblock v. Albany Cnty. Bd. of Elections*,
 422 F.3d 77 (2d Cir. 2005).........................................................................................22

*Kern v. Joyce*,
 857 Fed.Appx. 691.....................................................................................................23

*Kesner v. Buhl*,
 20 Civ. 3454 (PAE), 2022 WL 718840 (S.D.N.Y. Mar. 10, 2022) ..........................30

*Kingstown Capital Management, L.P. v. Vitek*,
  19cv3170, 2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)......................................17, 18, 20, 22

*Kreisler v. Second Ave. Diner Corp.*,
  731 F.3d 184 (2d Cir. 2013)...........................................................................................26

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020)............................................................................................30

*Laxman v. Shapiro*,
  No. 06 Civ.11408 DLC, 2006 WL 3423807 (S.D.N.Y. Nov. 29, 2006) ................................21

*Lehman Bros. v. Giddens (In re Lehman Bros.)*,
  617 B.R. 231 (Bankr. S.D.N.Y. 2020) ..................................................................................24

*Levin v. American Document Services, LLC*,
  828 Fed.Appx. 788 (2d Cir. 2020) ......................................................................................26

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)......................................................................................10, 11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013)..........................................................................................10

*Lipman v. Rodenbach*,
  852 Fed.Appx. 578..................................................................................................23

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)...........................................................................................26

*McCarty v. Bank of New York Mellon*,
  669 Fed.Appx. 6 (2d Cir. 2016)......................................................................................26

*Myers v. Moore*,
  326 F.R.D. 50 (S.D.N.Y. 2018) .......................................................................................27

*Owens v. Turkiye Halk Bankasi A.S.*,
  20cv02648, 2021 WL 638975 (S.D.N.Y. Feb. 16, 2021).................................................6, 17

*Pacheco. V. Serendensky*,
  393 F.3d 348 (2d Cir. 2004)..........................................................................................13

*Palin v. New York Times Co.*,
  510 F.Supp.3d 21 (S.D.N.Y. 2020) ................................................................................30

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)...............................................................................................14, 17

*Pippins v. KPMG LLP*,
  No. 11 Civ. 0377(CM), 2011 WL 1143010 (S.D.N.Y. Mar. 21, 2011)...................................19

*Priestley v. Comrie*,
  No. 07 CV 1361(HB), 2007 WL 4208592 (S.D.N.Y. Nov. 27, 2007) ....................................25

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
  757 F.3d 79 (2d Cir. 2014).......................................................................................................26

*In re Refco Securities Lit.*,
  759 F.Supp.2d 301 (S.D.N.Y. 2010).........................................................................................29

*In re Reyes*,
  627 B.R. 569 (Bankr. S.D.N.Y. 2021) .....................................................................................24

*Ross v. Bernhard*,
  396 U.S. 531 (1970).................................................................................................................12

*Ryan v. Aetna Life Ins. Co.*,
  765 F.Supp.133 (S.D.N.Y. 1991) .............................................................................................25

*S.E.C. v. Haligiannis*,
  470 F.Supp.2d 373 (S.D.N.Y. 2007).........................................................................................23

*Schiff v. ZM Equity Partners, LLC*,
  19cv4735, 2020 WL 5077712 (S.D.N.Y. Aug. 27, 2020) .......................................................12

*Seghers v.Morgan Stanley DW, Inc.*,
  No. 06 Civ. 4639, 2007 WL 1404434 (S.D.N.Y. May 10,2007)..............................................24

*Seybold v. Groenink*,
  No. 06 Civ. 772(DLC), 2007 WL 737502 (S.D.N.Y. Mar. 12, 2007).....................................15

*Simmons v. Trans Express Inc.*,
  16 F.4th 357 (2d Cir. 2021) .......................................................................................................1

*Skelton Fibres Ltd. v. Canas*,
  No. 96 Civ. 6031 DLC, 1997 WL 97835 (S.D.N.Y. Mar. 6, 1997) .........................................17

*Smith v. Apple*,
  21cv3657, 2022 WL 313874 (S.D.N.Y. Feb. 2, 2022)..............................................................11

*Smith v. Stevens*,
  957 F.Supp.2d 466 (S.D.N.Y. 2013).........................................................................................27

*Sparrow Fund Mgmt. LP v. MiMedx Group, Inc.*,
  18 Civ. 4921 (PGG)(KHP), 2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019)............................11

*Springut v. Don & Bob Restaurants of America, Inc.*,
    57 A.D.2d 302 (4th Dep't 1977) ........................................................24

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ...............................................................10

*Tasini v. New York Times Co., Inc.*,
    184 F.Supp.2d 350 (S.D.N.Y. 2002) .................................................26

*Tong v. Target,Inc.*,
    83 A.D.3d 1046 (2d Dep't 2011) ......................................................24

*Tyco Intern. Ltd. v. Walsh*,
    No. 02 Civ. 4633(DLC), 2010 WL 3860390 (S.D.N.Y. Oct. 4, 2010) ......................6

*U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ..............................................................10

*United States v. Pikna*,
    880 F.2d 1578 (2d Cir. 1989) ............................................................17

*V&A Collection, LLC v. Guzzini Properties, Ltd.*,
    20 Civ. 1797 (KPF), 2021 WL 982461 (S.D.N.Y. Mar. 16, 2021) ....................11

*Valyrakis v. 346 W, 48th Street Housing Development Fund Corp.*,
    161 A.D.3d 404 (1st Dep't 2018) ......................................................25

*Van Cauwenberghe v. Biard*,
    486 U.S. 517 (1988) .........................................................................14

*Wamai v. Industrial Bank of Korea*,
    21cv325, 2021 WL 3038402 (S.D.N.Y. July 14, 2021) .......................17

*Wave Studio, LLC v. General Hotel Management Ltd.*,
    712 Fed.Appx. 88 (2d Cir. 2018) ......................................................16

*Woodford v. Cmty. Action Agency of Greene Cnty.*,
    239 F.3d 517 (2d Cir. 2001) ..............................................................18

*Xu v. City of New York*,
    No. 08 Civ. 11339(DLC), 2010 WL 3060815 (S.D.N.Y. Aug. 3, 2010) ..........21, 22

*Yan Ping Xu v. City of New York*,
    No. 08 Civ. 11339(DLC), 2010 WL 4878949 (S.D.N.Y. Dec. 1, 2010) ..........18, 20

*Yáñez Osuna v. Citigroup Inc.*,
    820 Fed.Appx. 38 (2d Cir. 2020) ......................................................14

**Statutes**

N.Y. Civil Rights Law § 76-a(1)(a) (New York anti-SLAPP Act) ........................................29, 30

N.Y. Judiciary Law § 487 ................................................................................................................9

**Other Authorities**

CPLR 202..........................................................................................................................................24

CPLR 217....................................................................................................................................24, 25

CPLR 2221 (d) and (e).............................................................................................................13, 23

Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), (b)(7)..................................................................1, 10, 27

Fed. R. Civ. P. 12(b)(2)...................................................................................................................10

Fed. R. Civ. P. 19 (a) and (b) ........................................................................................................12

Fed. R. Civ. P. 44.1 ...........................................................................................................................6

Fed. R. Evid. 201 ...............................................................................................................................1

*Moroccan Law* ....................................................................................................................1, 5, 7, 13

## PRELIMINARY STATEMENT

Defendant Omar Belmamoun ("Belmamoun") submits this Memorandum of Law and the accompanying declarations/affirmations and exhibits  in support of his motion, pursuant to FRCP 12(b)(1), (b)(2), (b)(6), and (b)(7), to dismiss the Complaint ("Complaint").[1]

## SUMMARY OF ARGUMENT

This suit is a prime example of abusive desperate forum shopping, by parties with vastly greater resources, who have lost or are losing litigation they have brought or are defending in New York and Morocco, involving the same or similar issues, and purely Moroccan facts and Moroccan law, which are subject to the exclusive jurisdiction of Moroccan courts.  As one Plaintiff has already argued in a related New York State court action in arguing to stay that action in favor of multiple related cases pending in Morocco, "*there are multiple related cases still pending in Morocco, … the balance of equities weighs in favor of maintaining the status quo pending a determination of those issues under Moroccan Law. . . .*"

Plaintiffs ignore undisputed binding Moroccan court and government orders as to the governance of BPM; that Mr. Belmamoun is the Chairman and CEO of Brookstone Partners Morocco S.A. ("BPM"); that Moroccan court have twice rejected their efforts to appoint a legal administrator on virtually the same grounds Plaintiffs raise here; and the existence of other first-filed cases.  This suit is one of many examples of Plaintiffs using their vastly superior resources to re-litigate issues and to prevent BPM/Belmamoun from investigating BPM's $4 million investment in Michael Toporek ("Toporek")'s company FinCo Prime Consulting Corporation ("FinCo").

---

[1] This motion relies on documents filed in New York state and Moroccan courts.  The supporting declarations include as exhibits important court documents, but since the New York dockets are voluminous, we cite other documents by their docket entry with an electronic link thereto, pursuant to FRE 201.  A court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings. *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021); *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records used on  a motion to dismiss).

Belmamoun is Chairman and CEO of BPM.  Prior to 2018, Toporek persuaded BPM to invest $4 million in FinCo, owned, controlled by, and in privity with, Toporek.  In 2018, *BPM* fsued  FinCo in New York Supreme Court, Index No. 656342/2018 ("New York Litigation 1"), to enforce *BPM's* contract right to access FinCo's financial records.  For four years, Toporek and FinCo have used their vastly superior resources to oppose releasing those records in New York Litigation 1, and to harass Belmamoun and his counsel by filing this litigation, other New York and Moroccan litigations, making governance and misappropriation issues similar to those raised here, and losing. The Complaint admits the same litigation is ongoing in Morocco.  Toporek and the other Plaintiffs already have access to the records and information about the $4 million, and all Plaintiffs have an obvious conflict in stopping BPM/Belmamoun from obtaining the same information.

Plaintiffs allege here that Belmamoun's authority ended in December 2020, when his six year term allegedly expired.  The Moroccan and New York courts have rejected similar governance arguments, and Plaintiffs are currently litigating their latest iteration in New York and Morocco.  This suit has no merit and is defective for many reasons.

First, this Court has no personal jurisdiction over Belmamoun, because the claims are based on acts in Morocco.  To our knowledge, Plaintiffs have not served BPM, a necessary party. Second, the Moroccan Courts have exclusive jurisdiction over derivative suits involving a Moroccan entity like BPM.  Third, perhaps easiest to resolve, this is an inconvenient forum. Moroccan law controls the governance and alleged misappropriation issues, which will involve a battle of Moroccan legal and accounting experts.  All the facts and witnesses are in Morocco. BPM, Belmamoun, and Luminy Invest are Moroccan citizens and residents, with no presence in New York.  Shareholder Plaintiffs have engaged in business in Morocco and are litigating the same issues in Morocco, and have already conceding it is a competent forum, where cases should

precede first. The Court may also abstain.

Fourth and Fifth, principles of first-filed and preclusion apply. One or more Plaintiffs has previously litigated, or is still litigating, the same or similar claims or defenses in multiple suits, largely losing. Sixth, the statute of limitations has run. Seventh and Eighth, the Shareholder Plaintiffs are improper derivative plaintiffs, because they have significant conflicts of interest with BPM, the entity at issue. FinCo has no standing. Ninth, the Complaint fails to plead sufficiently. Tenth, this action is barred by substantive provisions of New York's expanded anti-SLAPP statute.

## STATEMENT OF FACTS

### 1.     The Parties

Belmamoun and Luminy Invest, his wife's company, are Moroccan citizens, control 50% of BPM, and are BPM directors. Toporek, Matthew Lipman ("Lipman"), Sweetpea Ventures Inc. ("Sweetpea"), and MJT Park Investors, Inc. ("MJT") control the other 50%. In December 2014, Belmamoun was elected CEO and Chairman of BPM. On April 9, 2019, Toporek and Lipman resigned as directors. Belmamoun Decl. ¶¶5-8. FinCo and Toporek are in privity. Belmamoun Decl. ¶¶7-9, 12. At minimum, if privity is disputed, there should be discovery and a hearing.

### 2.     The Investment and BPM's Demand for Records

In 2014, at Toporek's suggestion, BPM invested $4 million, which Belmamoun had earned for it, by executing Stock Purchase Agreements ("SPA") to become a FinCo stockholder. Belmamoun Decl. ¶¶12, Exh. 1. Each SPA was drafted solely by Toporek's team with identical language. Each is "subject to the Moroccan Currency Office Approval," §4.1, because Moroccan foreign exchange law controls what funds Moroccans can transfer outside Morocco and requires BPM to file reports annually with the government providing the value and status of its foreign investment to verify there was no attempt to evade Moroccan laws. Belmamoun Decl. ¶13.

Section 7.1 of the SPA grants BPM broad, unlimited rights to financial records:

to visit and inspect the Company's [FinCo's] properties, *to examine its books of accounts and records and to discuss the Company's affairs, finances, and accounts with its officers, all at such reasonable times as may be requested by the Investor*…  (emphasis added).

Belmamoun Decl. ¶14, Exh. 1.  FinCo never paid BPM any return on this investment.  *Id.* 15.  For several years, BPM, has unsuccessfully sought access to FinCo's financial records *under the SPA* to learn about FinCo's finances and what happened to this $4 million.  Belmamoun Decl. ¶¶16-47.

On November 2, 2018, after FinCo's repeatedly refused access, BPM demanded access, asserting under the SPA's "broad rights of access to [FinCo's] information" and the right "to visit and inspect [FinCo's] properties, to examine its books of accounts and records and to discuss [FinCo's] affairs, finances, and accounts with its officers…."   This First Demand also sought eleven other narrow categories of items.  FinCo did not comply.  Belmamoun Decl. ¶17.

3.      **The New York Disclosure Litigation ("New York Litigation 1")**

On December 19, 2018, after FinCo rejected the First Demand, BPM filed New York Litigation 1 ("Second Demand"), a petition to access FinCo's financial records.  Belmamoun Decl. ¶¶18, 19, Exh. 2.  FinCo's response admitted that BPM had a contractual right of access, but also alleged, as it does here, that Belmamouns misappropriated $1.5 million, attaching the same chart as it does here as Exhibit 2 to this Complaint.  *Id.* ¶¶20-22, Exh. 3.  On January 17, 2019, the Court agreed that the SPA gives BPM broad rights of access to FinCo's accounts and records and ordered the production of eleven categories of documents.  *Id.*  ¶23, Exh. 4 (the "2019 Decision").  After notice of entry,  FinCo never perfected an appeal, and the time to do so has expired.  *Id.*  ¶24.

Toporek and Lipman sought to intervene, to vacate, and a stay, arguing that Belmamoun lacked authority to represent BPM and sought records for improper purposes.  The Court and the Appellate Division denied the motions.  *Id.*  ¶¶26-32, Exh. 5, 6.  On July 23, 2019, *on consent of all Plaintiffs here*, the Court stayed the 2019 Decision in favor of, and pending the outcome of, Moroccan Litigation 1 (discussed below) concerning Belmamoun's authority.  *Id.* ¶34, Exh. 7.

On November 24, 2021, as a result of a favorable final decision in Moroccan Litigation 1 on governance, BPM resumed New York Litigation 1 by order to show cause to lift all stays. Belmamoun Decl. ¶35; Dkt. 214; *see* Dkt. 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229.

FinCo opposed lifting the stay, arguing that Belmamoun was acting in bad faith and that "there are multiple related cases still pending in Morocco, and the balance of equities weights in favor of maintaining the status quo pending a determination of those issues under Moroccan Law. . . ," citing governance litigation in Morocco (Moroccan Litigation 1), Belmamoun's salary suit against BPM in Morroco (Morocco Litigation 7), and MJT and Toporek's criminal case against Belmamoun in Morocco (Moroccan Litigation 4) (all discussed  below).  FinCo did not raise the claim here that Belmamoun's term expired in December 2020.  Exhibit 8, Belmamoun Decl. ¶36.

On December 20, 2021, the Court granted BPM's motion, lifted the stay, and directed production of 11 categories of documents, not addressing the broad right of access ("December 2021 Decision").  It relied on the final decision in Moroccan Litigation 1 and a Moroccan Trade Register official filing and held that "there is no longer a good faith dispute about whether or not Omar Belmamoun has the authority to act as CEO on behalf of the interests of Brookstone Partners Morocco S.A."  Belmamoun Decl. ¶37, Exh. 9.  After notice of entry, FinCo has not appealed, and its time to do so has expired.  Decl. ¶38.  Prior to the December 2021 Decision, FinCo did not raise the claim made here that Belmamoun's term expired in December 2020.  Belmamoun Decl. ¶37.

BPM made four additional demands for access, and FinCo has refused to comply. Belmamoun Decl. ¶¶40-45, Exh. 10, Dkt. 260, 295, 297.  On January 5, 2022, FinCo raised *for the first time* the claim that Belmamoun's term expired in December 2020 by citing shareholder Plaintiffs' October 2021 suit in Morocco (Moroccan Litigation 3), which was not yet served on

Belmamoun.  Belmamoun Decl. ¶40, Exh. 11.  On February 1, 2022, BPM moved by order to show cause to enforce its broad right to examine FinCo's records, but the Court denied the request stating that BPM needed "to lay out a better record of some form of demand" "specifically identifying how any compliance has been made was failed under either contract or statutory right." Belmamoun Decl. ¶¶42, Dkt. 249-260, Dkt. 269, pp. 29-30.  On June 22, 2022, after making such further demands, BPM moved to enforce its broad right of access based on a supplemental record. FinCo's opposition is due August 4, 2022.  Belmamoun Decl. ¶46, Exh. 13.

Youssef Hanane, Moroccan counsel, explains that under Moroccan law,[2] (i) Moroccan courts have exclusive jurisdiction over these issues; (ii) decisions in Moroccan Litigation 1, discussed below, are binding; (iii) Belmamoun is  Chairman and CEO of BPM; and (iv) his authority did not end in April 2019, when Toporek and Lipman resigned as directors or in December 2020, because his authority continues until the shareholders elect somebody to replace him or the Moroccan courts appoint a legal administrator.  Hanane Decl. ¶¶20-37.  In New York Litigation 1, he submitted three affidavits to this same effect.  Hanane Decl. ¶9; Dkt. 220, 221, 222, 223, 224; and 250, 251, 252; and 282, 283, 284, 285, 286, 287, 288).  Leaving BPM without representation is not an option; it must have an officer to protect its interests.  Hanane Decl. ¶¶33-35.

**4.      Moroccan Litigation 1**

First, *prior* to resumption of New York  Litigation 1, Moroccan courts ruled that Belmamoun is Chairman and CEO of BPM.  On November 9, 2020, the Appellate Division of the Moroccan Commercial Court held in n°2802 (case n°1200/8228/2020), litigation *between Belmamoun and Plaintiffs Toporek and Lipman*, that Belmamoun is Chairman and CEO of BPM.

---

[2] Courts may consider the opinion of foreign law experts as to ultimate legal conclusions when substantive issues are governed by foreign law.  FRCP 44.1; *Owens v. Turkiye Halk Bankasi A.S.*, 20cv02648 (DLC), 2021 WL 638975, at FN3 (S.D.N.Y. Feb. 16, 2021) (internal quotation marks and citations omitted); *Tyco Intern. Ltd. v. Walsh*, No. 02 Civ. 4633(DLC), 2010 WL 3860390, at *2 (S.D.N.Y. Oct. 4, 2010) (same).

Belmamoun Decl. ¶¶49-59; Hanane Decl. ¶¶10-20. Toporek and Lipman fully participated. Belmamoun Decl. ¶58; Hanane Decl. ¶14. The Court held that a purported ordinary general meeting of shareholders held by Toporek and Lipman, dated May 20, 2019, was null and void on the basis, among others, that the ordinary general meeting was not held in the manner required by Moroccan Law, and thus did not to revoke Belmamoun's position as Chairman and CEO of BPM and the position of Luminy Invest as a member of the BPMBoard of Directors.     The Appeal decision ordered the elimination of the minutes of the ordinary general meeting dated May 20, 2019 from the trade registry of BPM. Belmamoun Decl. ¶55; Hanane Decl. ¶13. Exh. 14.

On August 26, 2021, the President of the Commercial Court in Casablanca directed the Register of Commerce to register Belmamoun as Chairman and CEO of BPM, which the Register did on September 27, 2021. Belmamoun Decl. ¶56; Hanane Decl. ¶16, Exh. 15 (collectively, "Moroccan Litigation 1"). Plaintiffs did not appeal and the decision and order is in force. Belmamoun Decl. ¶59; Hanane Decl. ¶¶4, 31. Mr. Belmamoun still has capacity as Chairman and CEO, and that capacity to act cannot be changed without a binding judicial decision in Morocco or an affirmative vote of the majority of the shareholders. Hanane ¶¶6-10, 23-25, 28-37.

On September 27, 2021, the Trade Registry entered in its official records that Omar Belmamoun is the Chairman and CEO of BPM and the company Luminy Invest is Board of Directors' member. Belmamoun Decl. ¶57, Hanane ¶17, Exh. 16. Since the Morocco Litigation has concluded, it shows that Omar Belmamoun is the Chairman and CEO of BPM and therefore Omar Belmamoun is the legal representative of BPM under Moroccan law, and Omar Belmamoun is a Board of Directors' member (and the chairman) of BPM and so is the company Luminy Invest. Hanane ¶20. In February 2022, the Trade Registry extract (Modèl 7) of BPM, dated January 12, 2022 (the "Extract") showed Mr. Belmamoun is the Chairman and CEO, and this is considered as

the legal representative of the Company.  That is the case today as well.  Hanane ¶¶23-25.

**5.        Plaintiffs' Moroccan Litigations 2-7**

Plaintiffs have unclean hands by attempting to use multiple litigations and raising raising similar issues as raised here to harass Belmamoun and prevent disclosure about the $4 million. First, they unsuccessfully submitting fictitious minutes of a BPM shareholder meeting to replace Belmamoun.  Moroccan Litigation 1 rejected this.  *Supra* at pp. 7-8; Belmamoun Decl. ¶55.

Second, in 2019, the same shareholder Plaintiffs filed a separate suit in the Casablanca Commercial Court seeking appointment of a legal administrator for BPM on similar governance grounds raised here, that the assembly of shareholders had acted on June 19, 2019 to remove him as CEO and Chairman, leaving BPM without a representative.  On July 15, 2019, the Moroccan Court rejected the application.  The shareholders appealed, but on January 14, 2020, the Court of Appeal affirmed the judgment.  ("Moroccan Litigation 2").  Belmamoun Decl. ¶60, Exh. 17.

Third, in October 2021, they brought a civil action in Morocco alleging that terms of Belmamoun as CEO and Luminy Invest as director expired in December 2020, the same claim made here.  This litigation is still pending.  Complaint Exh. 1 ("Moroccan Litigation 3").  *Id.* ¶40.

Fourth, they brought two similar criminal actions in Morocco against Belmamoun ("Moroccan Litigations 4 and 5"), contending that he had misappropriated the BPM funds Plaintiffs raise here. Belmamoun refuted this with reports, Exh. 18, 19, and two independent auditor reports of BPM.  The first auditor certified BPM's financials "without qualification," Exh. 20, and the second concluded that [t]to assert that Mr. Omar Belmamoun embezzled [funds] for his own benefit is pure fabrication."  Exh. 21.  The Court found the first complaint inadmissible, Exh. 22; the second case is still pending.  Belmamoun Decl. ¶¶68-72; Hanane ¶¶48-50.

Fifth, in May 2022, the *same shareholder Plaintiffs* again filed suit to appoint a judicial administrator for BPM, making same governance arguments as Plaintiffs make here that (i) no

Board exists, because it is now less than three members and no general assembly of shareholders has elected new directors; and (ii) Belmamoun has no power, because his term expired in December 2020.  On June 13, 2022, the Moroccan Court rejected these arguments.  ("Moroccan Litigation 6").  Belmamoun Decl. ¶¶74, 75, Exh. 23.[3]  The Court said in Exhibit 23:

> Whereas plaintiffs request the court to appoint an agent to convoke a general assembly for the dissolution of the company,
>
> Whereas, the Company Brookstone Partners Morocco is a joint-stock company as per its statutes; after examining the statements of the parties and the documents on file, it appears that a general assembly was held on December 31, 2001, with the presence of the plaintiffs; therefore the request aiming to appoint an agent to convoke the general assembly is unjustified since a general assembly had already been held; the court should thereupon declare the rejection of the request.

### 6.      Plaintiffs' Other New York Litigation

In addition to using this litigation to forum shop and re-litigate issues, on February 18, 2022, the shareholder Plaintiffs sued Belmamoun, undersigned counsel, and BPM's deputy CEO in New York Supreme Court for treble damages under N.Y. Judiciary Law § 487 on the same issues of governance raised here, in New York Litigation 1, and in Morocco.  ("New York Litigation 3").  On June 23, 2022, BPM moved to dismiss the case and for attorney's fees/costs.  That motion is pending and opposition is due August 12, 2022.  Belmamoun Decl. ¶¶78,79, Exh. 24, 25.

### 7.      There Is No Merit in the Governance Claims

The governance claims have no merit for the reasons set forth by Mr. Hanane.  BPM must have an officer to protect its interest, and Belmamoun remains the Chairman and CEO under Moroccan court Order and government registration until he is replaced either by a new Moroccan

---

[3] In addition, In March 2020, Mr. Belmamoun sued BPM in Rabat for his unpaid salaries of approximately $ 3 million.  Moroccan Litigation 7.  Mr. Belmamoun submitted the two auditor reports cited above, and the case is pending, with the next hearing scheduled for October 4, 2022. Belmamoun Decl. ¶76.

court order or an proper election of the stockholders.  Hanane Decl. ¶¶20, 21, 23-25, 28-37.[4]

## ARGUMENT

## I. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BELMAMOUN FOR THE CLAIMS AT ISSUE; BPM HAS NOT BEEN SERVED.

In this diversity case, this Court, sitting as a New York court, applies New York substantive law.  *Comm/Tech Communication Technologies, Inc. v. Wireless Data Systems, Inc.*, 163 F.3d 149, 150 (2d Cir. 1998).  To survive a Rule 12(b)(2) motion, Plaintiffs must make a *prima facie* showing that jurisdiction exists as to *each* claim, *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  The Court should not draw argumentative inferences in Plaintiffs' favor and is not required to accept as true legal conclusions couched as factual allegations.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).  Plaintiffs must allege sufficient facts to establish  a basis for jurisdiction under New York  law, and that "the exercise of personal jurisdiction comports with due process."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  The defendant must "have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (quotation omitted).

As to *each claim*, (1) "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State"; (2) "the plaintiff's claim must arise out of or relate to the defendant's forum conduct"; and (3) the court must determine that jurisdiction is "reasonable under the circumstances."  *U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019)

---

[4] The conclusory misappropriation charges also have no merit as refuted in Moroccan Litigation 4 and the reports submitted to the Court therein.  Belmamoun Decl. ¶¶68-71, Exh. 18-21.

(internal citations omitted).

BPM and Belmamoun are in Morocco, and he has not done business in the United States for at least five years.  The funds were allegedly taken from BPM's account, which is in Morocco. Belmamoun Decl. ¶¶5, 7, 68.  To the extent the misappropriation claims are not too vague, *infra* at Point IX, Plaintiffs do not *allege* conduct in New York, Complaint ¶29, and the conduct is in Morocco.  The Court should dismiss.  *Smith v. Apple*, 21cv3657 (DLC), 2022 WL 313874, at *4 (S.D.N.Y. Feb. 2, 2022) (dismissing claims not arising out of Apple's contacts with New York).

The governance claims that Belmamoun lacks authority to cause BPM to undertake litigation are also conclusory, which the Court need not accept as true in its personal jurisdiction analysis.  *Licci*, 673 F.3d at 59.  In any event, BPM governance issues and acts and questions of Belmamoun's authority are acts in Morocco over which this Court has no personal jurisdiction. The mere filing *by BPM* of New York Litigation 1 does not establish Belmamoun's personal, minimum contacts, because this is a company act, not a personal act.  *Sparrow Fund Mgmt. LP v. MiMedx Group, Inc.*, 18 Civ. 4921 (PGG)(KHP), 2019 WL 1434719, at *12 (S.D.N.Y. Mar. 31, 2019) (CEO's causing  company to file suit insufficient to establish personal jurisdiction over CEO); *cf. AMPA Ltd. v. Kentfield Capital LLC*, No. 00-cv-0508 (NRB), 2001 WL 204198, at *2 n.5 (S.D.N.Y. Mar. 1, 2001) (filing an action for corporation does not subject directors to personal jurisdiction without regard to the directors' own contacts with New York).

Even if Belmamoun were a party to New York Litigation 1, his "appearance as petitioner in one proceeding does not necessarily subject it to personal jurisdiction in another matter, even in the same court."  *V&A Collection, LLC v. Guzzini Properties, Ltd.*, 20 Civ. 1797 (KPF), 2021 WL 982461, at *6 (S.D.N.Y. Mar. 16, 2021) (quoting *Gulf Ins. Co. v. Caldor Corp.*, No. 03 Civ. 2894 (LLS), 2006 WL 1586571, at *3 (S.D.N.Y. June 9, 2006); *see also China Nat'l Chartering*

*Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 592 (S.D.N.Y. 2012).

To Belmamoun's knowledge, Plaintiffs have failed to serve BPM, as the Court ordered. BPM is a necessary and indispensable party under FRCP 19, which requires a two-step test to determine whether to dismiss for failure to join an indispensable party.   First, the court must determine if the absent party is a "necessary" party under Rule 19(a).  *Schiff v. ZM Equity Partners, LLC*, 19cv4735, 2020 WL 5077712, at *12 (S.D.N.Y. Aug. 27, 2020) (quoting *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)).  Second, if a party is necessary, and joinder is not feasible, the court must "determine whether the party is 'indispensable' under Rule 19(b)."  *Id*. Since in a derivative action, the entity is a necessary and indispensable party requiring its joinder, this case cannot proceed.  *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970); *Bartfield v. Murphy*, 578 F.Supp.2d 638, 650-51 (S.D.N.Y. 2008) (courts near unanimous in dismissing).

## II.    THIS COURT LACKS JURISDICTION.

Plaintiffs derivatively challenge Belmamoun's status as an officer, asserting that *under Moroccan law*, his elected term as an officer expired automatically six years after his election. This is a derivative governance claim that there has been no meeting to elect a successor.  Although this is not true, (there was a meeting at which Plaintiffs forced a stalemate, Belmamoun Decl. ¶87; Hanane Decl. ¶¶28, 31), these governance issues are not issues this Court may determine, because Morocco has exclusive jurisdiction over such a shareholder derivative suit.  Hanane Decl. ¶¶38-47, Hanane Exh.2.  In addition, common sense and judicial restraint strongly suggest that an American court should not control a foreign corporation with no presence here as to its governance; change or disregard who are its officers; or ignore prior binding Moroccan court and government orders that Mr. Belmamoun is the Chairman and CEO, which orders Plaintiffs do not dispute.[5]

---

[5] By this Motion, we also preserve, but do not re-brief, our application to dismiss for lack of diversity jurisdiction. Dkt. 21.  We maintain that the *verified* Complaint admits that BPM is a limited liability

III.     **THIS IS AN INCONVENIENT FORUM.**

Plaintiffs have twice conceded that Moroccan courts are adequate, and indeed, a preferred forum. First, in July 2019, FinCo, Toporek, and Lipman signed a stipulation, then so ordered, to stay New York Litigation 1 pending the outcome of Moroccan Litigation involving these issues (Moroccan Litigation 1).  Belamamoun Decl. ¶¶34, 52, 55, Exh. 7.  In November 2021, when BPM moved to lift the stay and to resume New York Litigation 1, FinCo opposed lifting the stay on the ground that the court should to defer governance issues to the Moroccan courts, arguing that  *"there are multiple related cases still pending in Morocco, and the balance of equities weights in favor of maintaining the status quo pending a determination of those issues under Moroccan Law. . . ,"* citing pending Moroccan Litigation 1, Moroccan Litigation 4 (MJT and Toporek's criminal case against Belmamounme), and Moroccan Litigation 7 (Belmamoun's salary case).  FinCo did not then raise the claim made here that Belmamoun's term expired in December 2020.  Belmamoun Decl. ¶36, Exhibit 8, at ¶¶ 6-20.  CPLR 2221 (d) and (e) bars it from doing so now.

The circumstances here  present a compelling case for dismissal on the grounds of forum non conveniens, because there are binding Moroccan orders; Morocco has exclusive jurisdiction over the claims; Moroccan *civil* law controls the claims; the relevant acts and witnesses are in Morocco; shareholder Plaintiffs came to Morocco to do significant business, including but not limited to investing in BPM, have a presence in Morocco, and have readily brought (or participated in) prior and ongoing Moroccan litigations involving the same or similar issues, which were either decided against Plaintiffs or are still pending and further along than this action; and the Moroccan courts are capable of deciding all issues.  Further, there are two other similar cases pending in New

---

company, and Plaintiffs are estopped from arguing otherwise. *Pacheco. V. Serendensky,* 393 F.3d 348, 354 (2d Cir. 2004).  At minimum, there should be an evidentiary hearing.

York and further along.  *See* Belmamoun Decl. ¶¶8, 10-12.

The forum non conveniens determination is committed to this Cpirt's discretion, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981), which "is accorded substantial flexibility." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (citations omitted).  In making this analysis, the court "must first determine whether an adequate alternative forum exists." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004).  If one exists, the court then "balances public and private interests, giving deference to the plaintiff's choice of forum, to determine whether the balance strongly favors dismissal." *Id.*  All factors heavily favor dismissal.

### A.    Morocco is an Adequate Alternative Forum.

 "A proposed forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Yáñez Osuna v. Citigroup Inc.*, 820 Fed.Appx. 38, 43 (2d Cir. 2020) (internal quotations and citations omitted).  A forum is inadequate only if "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254 & n. 22.  Belmamoun is amenable to suit in Morocco.  Toporek and the other shareholders have brought similar suits in Morocco and have been sued in Morocco by Belmamoun.  *Supra* at pp. 6-9.  FinCo is in privity with Toporek.  Belmamoun Decl. ¶¶ 9.12; *infra* at p. 22.

Based on the Moroccan litigation between the parties discussed above, it is clear that the Moroccan court system is fair and open and far more than adequate to provide a fair opportunity to resolve the dispute.  Hanane Decl. ¶¶4,5.  This is particularly true, because the issues are governed by Moroccan law, which New York law applies to governance issues, because New York follows the "internal affairs" choice-of-law doctrine:

> The right of a shareholder to object to conduct occurring in the operation of the corporate enterprise is determined by the law of the state [or country] of incorporation. This includes acts that are beyond the purposes of the corporation, acts which are prohibited either by the

state of incorporation or by the state where the acts are to be performed and acts which are alleged to be beyond the authority of the officers or directors.

*Seybold v. Groenink*, No. 06 Civ. 772(DLC), 2007 WL 737502, at *5-6 (S.D.N.Y. Mar. 12, 2007) (quoting *Hausman v. Buckley*, 299 F.2d 696, 702 (2d Cir. 1962), applying Dutch law).

      As to the misappropriation issues, New York applies "interest analysis" choice-of-law rules to tort claims.  This analysis considers "[t]he contacts of the parties and occurrences with each jurisdiction… together with the policies underlying each jurisdiction's rules, the strength of the governmental interests embodied in these policies, and the extent to which these interests are implicated by the contacts."  *Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc..*, 414 F.3d 325, 337 (2d Cir. 2005).  There is no allegation or evidence that the alleged misappropriations occurred anywhere but Morocco, *supra* at p. 11, Belmamoun Decl. ¶¶5, 7, 68, which implicates Moroccan interests, the impact on a Moroccan entity, and the duties set forth under Moroccan law.  The witnesses are also in Morocco.  As to both issues, a Moroccan court is a superior forum for applying its own *civil* law than this Court or a jury deciding a battle of experts.

      **B.**    **Plaintiffs' Choice of Forum is Not Controlling Here.**

      In light of the long history of the parties' litigation, the Court should not defer to Plaintiffs' choice of forum.  In addition to shareholder Plaintiffs willingly doing business, and attending BPM meetings in Morocco, and participating in Moroccan Litigation 1, they have willingly *initiated* Moroccan litigation on these same issues in Morocco for several years, including (i) in October 2021, bringing an almost identical, pending suit, attached to the Complaint as Exhibit 1 (sans its own exhibits) (Moroccan Litigation 3); (ii) two criminal complaints, including one as recently as February 8, 2022 (Moroccan Litigations 4 and 5); and (iii) two failed suits to appoint a legal administrator, the latest brought in May 2022 and rejected in June (Moroccan Litigation 2 and 6. Moroccan Litigation 7 I also pending and the misappropriation issue could be easily raised their

as an offset.  Both sets of claims center on acts in Morocco.  Shareholder Plaintiffs and FinCo, with whom they are in privity, seem merely displeased that so far they have lost almost all of the cases they have brought and are shopping for another forum to re-litigate.  Plaintiffs' ties to New York do not change this overwhelming balance in favor or Morocco, because they do not increase the convenience of a trial in this forum.  *See Wave Studio, LLC v. General Hotel Management Ltd.*, 712 Fed.Appx. 88, 90 (2d Cir. 2018).

### C.    The Private and Public Interest Factors Weigh in Favor of Morocco.

Private interest factors here include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Carlström v. Livförsäkring*, 19cv11569 (DLC), 2020 WL 7342753, at *7 (S.D.N.Y. Dec. 14, 2020).  Here, Belmamoun and shareholder/director Luminy Invest are citizens and residents of Morocco with no presence in New York and no recent activity here, while Toporek and Lipman have come to Morocco many times for BPM and other matters.  Mr. Belmamoun has limited resources, which are far exceeded by Mr.Toporek's.  Belmamoun Decl, ¶¶5, 7, 91-95. The books and records are in Morocco.  The legal experts and expert accountants who audited BPM are in Morocco.  The facts and law controlling Belmamoun's authority and alleged misappropriation are all in Morocco.  Plaintiff regularly engage in business and court suit in Morocco.  Thus, the relevant witnesses and evidence are in Morocco, and the practical factors strongly favor Morocco.

The public interest factors also strongly favor of Morocco.  These include:

the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty

*Wamai v. Industrial Bank of Korea*, 21cv325 (DLC), 2021 WL 3038402, at *7 (S.D.N.Y. July 14, 2021).  The need to apply foreign civil law in this case – especially law that is neither in English nor based on the common law – has long been a significant factor weighing toward *forum non conveniens* dismissal.  *See, e.g., Piper Aircraft Co.*, 454 U.S. at 260.  A Moroccan court, not a battle of experts, should decide these issues since the Complaint's allegations principally affect Moroccan matters, will apply Moroccan law, and are within Morocco's exclusive jurisdiction.

This Court has dismissed several cases for similar reasons.  *See Skelton Fibres Ltd. v. Canas*, No. 96 Civ. 6031 DLC, 1997 WL 97835, at *5-6 (S.D.N.Y. Mar. 6, 1997) (foreign parties, relevant witnesses, documents, and other evidence); *Esheva v. Siberia Airlines*, 499 F.Supp.2d 493, 498-99 (S.D.N.Y. 2007) (Russian forum, foreign witnesses/evidence, Russian law); *Kingstown Capital Management, L.P. v. Vitek*, 19cv3170 (DLC), 2020 WL 5350492, at *7-10 (S.D.N.Y. Sept. 4, 2020) (suit four years after a substantially similar foreign action; foreign witnesses/ evidence); *Carlström*, 2020 WL 7342753, at *4-8 (foreign activity; Sweden had greater interest); *Owens*, 2021 WL 638975, at *6 (plaintiffs' choice entitled to minimal deference, Turkey forum; private and public interest favored dismissal); *Wamai*, 2021 WL 3038402, at *4-7 (evidence in Korea, an adequate forum; Korean law, minimal New York connection).

**D.    The Court Should Abstain.**

Plaintiffs have so far lost the governance issues when they have raised them in Morocco or here.  *Supra* at pp. 5, 7-9. In view of  the facts here, the Court may abstain.  *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir. 1989). In exercising discretion, the Court may consider, *inter alia:*

> . . . (2) whether the federal forum is less inconvenient than the other for the parties;
> (3) whether staying or dismissing the federal action will avoid piecemeal litigation;
> (4) the order in which the actions were filed, and whether proceedings have advanced more in one  forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cnty.*, 239 F.3d 517, 522 (2d Cir. 2001) (citation omitted).  While we recognize this Court has rarely abstained, we submit that this case presents "exceptional circumstances where prudent administration of judicial resources and comprehensive disposition of litigation counsels" abstention in favor of the state court or the Moroccan courts. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 212 (2d Cir. 1985).

New York Litigation 1 began over three years prior to this action and is well along.  A final application for relief pending, and the issue of authority has been decided there once and will again in front of the court when FinCo files its opposition.  *Supra* at p. 6.  Shareholder plaintiffs have lost three times in Morocco on governance, and yet, four months before filing here, in October 2021, the brought Moroccan Litigation 3 on the very same governance issues.   This court is not less inconvenient given that the parties have already engaged in other courts.  A stay or dismissal would avoid piecemeal litigation, and state procedures can protect Plaintiffs' rights.  *See Yan Ping Xu*, 2010 WL 4878949, at *5 (stay in view of multiple, prior, parallel state-court litigations).  New York also has an important interest in enforcing the SPA rights governed by New York law.  The Court may also abstain in order to grant comity to foreign court decisions.  *Kingstown Capital Management*, 2020 WL 5350492, at *4.  In *Kingstown*, plaintiffs commenced an action abroad and then four years later brought an action in federal court.  The Court held the actions were parallel despite additional federal parties, different legal theories, and additional wrongdoing.  *Id*. at *6.

## IV.    THE COURT SHOULD DISMISS UNDER THE FIRST-FILED RULE.

This suit is an example of pure forum shopping by Plaintiffs to re-litigate issues either pending in other forums (frequently brought by Plaintiffs) or which have been resolved against them.  Not only is there one prior, and on one contemporaneously filed, suit in New York, and one prior pending in Morocco, but there are *multiple* cases filed before this current action.  Given the significant overlap of factual and legal issues in these prior litigations, and how far along they are

(including binding orders), the Court should apply the first-filed rule.

### A.    The Principles of the First-Filed Rule

Where there are two competing lawsuits, the first suit should have priority.  *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008); *U.S. ex rel. Cestra v. Cephalon, Inc.*, No. 10 CIV. 6457 SHS, 2014 WL 1087960, at \*4 (S.D.N.Y. Mar. 19, 2014).  The "competing lawsuits need not be identical," rather, "they must have sufficient overlapping factual and legal issues."  *Id.* at \*3.  There are only two exceptions to the rule, on which Plaintiffs have the burden to prove (1) "special circumstances," or (2) a balance of conveniences favors the second-filed suit.  *See Emp'rs Ins. of Wausau*, 522 F.3d at 275.  The Second Circuit has emphasized "the centrality of the balance of convenience" in analyzing whether the first-filed rule applies, and the court should not usually disfavor the first-filed case without this analysis.  *Id.* at 275-76.  The *only* two "special circumstances" that avoid the balance of convenience analysis are if (i) the first-filed suit was "an improper anticipatory declaratory judgment action," a "response to a specific, direct threat of litigation," and (ii) "forum shopping *alone* motivated the choice of the situs for the suit."  *Id.*  Plaintiffs must prove one of these exceptional situations.  *See Pippins v. KPMG LLP*, No. 11 Civ. 0377(CM), 2011 WL 1143010, at \*2 (S.D.N.Y. Mar. 21, 2011).

Neither exception applies here.  Plaintiffs initiated Moroccan Litigations 2-6 and New York Litigation 2.  Neither New York Liigation 1 nor Moroccan Litigation 7initiated by Belmamoun was preemptive forum shopping, since either all the facts and law centered in Morocco or it was necessary to sue FinCo to enforce the SPA.  Thus, none was a anticipatory declaratory action.  There is simply no evidence that forum shopping motivated any Belmamou/BPM filed suit.

### B.    Plaintiffs First-Filed Pending Moroccan Actions and are Bound by Their Choices.

Moroccan Litigation 1 has already issued binding orders that Belmamoun is the Chairman

and CEO of BPM, which the Moroccan Trade Registry has followed.  *Supra* at pp. 6-8.  Plaintiffs did not file it, but the phony meeting they called necessitated it.  Prior to the August 26, 2021, order of the President of that Court, Plaintiffs did not present to that Court their new allegation that Belmamoun's term allegedly expired in December 2020.   Unless a Moroccan Court changes the present order or status, a United States Court should not entertain such an attempt.

The overwhelming relevance of Morocco, and that Plaintiffs brought prior Moroccan Litigation 3, and first-filed several other Moroccan actions strongly support application of the first-filed rule and that Plaintiffs are bound by their strategic choices.  *See Kingstown Capital Management*, 2020 WL 5350492, at *7 (no prejudice from proceeding in forum plaintiff chose many years ago); *Yan Ping Xu v. City of New York*, No. 08 Civ. 11339(DLC), 2010 WL 4878949, at *5 (S.D.N.Y. Dec. 1, 2010) (stay federal action in favor of plaintiff's first-filed state action).

The timing of Plaintiffs' filing here strongly suggests forum shopping.  They have been litigating in Morocco for three years and have lost at least four times.  While they filed Moroccan Litigation 3 in October 2021, and they knew Belmamoun's actual address, but delayed serving him properly until they filed this case.  Belmamoun Decl. ¶64.  In May 2022, they also filed Moroccan Litigation 6, which was already rejected.  Belmamoun Decl. ¶¶74,75.

The same is true of the New York litigation.  Plaintiffs have litigated New York  Litigation 1 for three years.  In 2019, they raised misappropriation and authority issues.  Belmamoun Decl. ¶¶22, 27-33, Dkt. 12.   In its 2019 Decision, that Court necessarily rejected both in ordering production of eleven categories of documents.  Belmamoun Decl. ¶23, Exh. 4.  In December 2021, they again raised both misappropriation and governance issues, but never raised the issue of Belmamoun's term purportedly expiring in December 2020, and the Court rejected both and held there is no good faith dispute about whether or not Belmamoun has authority to act as CEO.  FinCo

has never appealed although it could have done so.  Belmamoun Decl. ¶¶36-38, Exh. 8, 9.

On June 22, 2022, BPM brought a renewed order to show cause to obtain full access to financial records.  FinCo's answer is due August 4, 2022.  Belmamoun Decl. ¶¶36-38, Exh. 13.  It is clear that New York Litigation 1 is much further along, and that Finco/Plaintiffs have a full opportunity there to present all their governance arguments.  Belmamoun Decl. ¶79.

Yet on February 2, 2022, Plaintiffs filed this case, two weeks after BPM's Demand 6 and after February 1, 2022, when BPM renewed its state motion.  *Id.* ¶¶42-45.  Furthermore, on February 18, 2022, they filed New York Litigation 3, raising the same issues and seeking to punish Belmamoun and his counsel, *Id.* ¶78, without waiting to continue litigating the governance issues of authority in New York Litigation 1, which has twice ruled against them; in Morocco, where they have lost several times; or even in this Court.  This multiplicity of litigations is clearly designed  to forum shop, to re-litigate issues, and to harass Belmamoun and exhaust his resources.  *See Laxman v. Shapiro*, No. 06 Civ.11408 DLC, 2006 WL 3423807, at *2 (S.D.N.Y. Nov. 29, 2006).

## V.    THE COMPLAINT IS BARRED BY CLAIM AND ISSUE PRECLUSION.

### A.    The Standards

Claim preclusion bars "later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (alteration in orig.) (internal quotations and citations omitted).  It

> precludes the parties from relitigating issues that were *or could have been raised* in that action. If a valid and final judgment has been entered on the merits of a case, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. (emphasis added).

*Xu v. City of New York*, No. 08 Civ. 11339(DLC), 2010 WL 3060815, at *4 (S.D.N.Y. Aug. 3, 2010) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195-96 (2d

21

Cir. 2010)).   It precludes subsequent litigation of related claims "even if based upon different theories or if seeking a different remedy."  *Xu*, 2010 WL 3060815, at *4 (quoting *Giannone v. York Tape & Label, Inc.,* 548 F.3d 191, 194 (2d Cir. 2008)).  It not only bars the parties to the underlying litigation, but also those in privity with the parties.  *Xu*, 2010 WL 3060815, at *4.  "… issue preclusion also [collateral estoppel]… applies to preclude subsequent litigation when an issue was (1) necessarily decided in the first action… (2) is decisive in the later action… and (3) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding… whether or not the tribunals or causes of action are the same."  *Id.* at *3.

### B.    Plaintiff Shareholders and FinCo are in Privity, and Each has Already Lost in the Moroccan or New York Litigations.

As noted *supra* at p. 3, Toporek controls FinCo.  Privity rests on whether the party to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion against them, and whether preclusion would be fair under the particular circumstances.  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005).  ". . .  [T]he connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding."  *Xu*, 2010 WL 3060815, at *4.  FinCo should be bound by the Moroccan cases, and the other Plaintiffs should be bound by FinCo's litigation.

Toporek and Lipman, who sought to intervene in New York Litigation 1 and to obtain a stay, Belmamoun Decl. ¶¶29, 30, and the other shareholder plaintiffs were parties in the Morocco Litigation and lost multiple times, including on Belmamoun's authority and appointment of a legal administrator.  Federal courts grant comity to the decisions of foreign courts.  *See Kingstown Capital Management*, 2020 WL 5350492, at *4-7.  The decisions by the Moroccan courts represent a final judgment on the merits, by a court of competent jurisdiction, in cases involving the same parties or their privies, and involving similar causes of action.  Hanane Decl. ¶¶19, 20, 24, 25, 31,

32.  Issues raised or that could have been raised should be precluded.

To the extent, Plaintiffs claim there is a new argument that Belmamoun's term expired in December 2020, that was known but not raised in Moroccan Litigation 1 (active through September 2021), and was raised but rejected in June 2022 in Moroccan Litigation 6.  Exh. 23; *supra* at p. 9. Thus, the argument is foreclosed.

FinCo has lost in New York Litigation 1.  The December 2021, Decision found "there is no longer a good faith dispute about whether or not Omar Belmamoun has the authority to act as CEO on behalf of the interests of Brookstone Partners Morocco S.A." There was no appeal.  The argument that Belmamoun's term expired in December 2020 was known but not raised before the December 2021 Decision  and is foreclosed.  CPLR 2221(d), (e).  "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based on different theories or if they seek a different remedy." *Giannone*, 548 F.3d at 194 (2d Cir. 2008) (per curiam) (citation omitted).  Though the December 2021 Decision is not technically a final judgment, "for purposes of collateral estoppel, 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *S.E.C. v. Haligiannis*, 470 F.Supp.2d 373, 382 FN8 (S.D.N.Y. 2007) (judgment not technically final given preclusive effect) (internal quotation marks and citations omitted).

This allegedly new issue is not new at all.  It could and should have been raised at that time before the Morocco and New York courts sustained Belmamoun's position as CEO and Chairman. *See Lipman v. Rodenbach*, 852 Fed.Appx. 578 (Mem), 583-84 (2d Cir. 2021) (claims barred even though plaintiff asserted different legal theories, but sought to recover for the same alleged harm based on the same underlying events); *Kern v. Joyce*, 857 Fed.Appx. 691 (Mem), 692 (2d Cir. 2021) claims from the same factual grouping are part of same cause of action and later claim barred

even if based on different legal theories for different).  There is no justification for not raising it at

that time.  *See Doe v. Columbia University*, 551 F.Supp.3d 433, 463 (S.D.N.Y. 2021) ("Because

Plaintiff could have received injunctive relief in the Article 78 proceedings, the doctrine of res

judicata precludes Plaintiff from bringing claims for injunctive relief").

## VI.    THE STATUTE OF LIMITATIONS HAS EXPIRED.

Since Plaintiffs are New York residents, New York applies New York's statutes of

limitations to these claims.  CPLR 202.  First, Plaintiffs' governance claim that Belmamoun's term

as BPM CEO and Chairman has expired[6] is a governance challenge to the term of Belmamoun's

election and whether he holds office.  The most closely aligned New York laws[7] are (i) BCL 619,

which permits shareholders aggrieved by a corporate election to bring a petition; and (ii) CPLR

217, which requires that a proceeding against a body or officer must be commenced within four

(4) months of the action challenged.  These provisions govern "actions brought to review corporate

elections under the Business Corporation law."  20 Carmody-Wait 2d §121:140, citing *Scheeler v.

Buffalo Wire Works Co., Inc.,* 50 Misc.2d 158 (Sup Ct, Erie County 1966); *Springut v. Don & Bob

Restaurants of America, Inc.*, 57 A.D.2d 302 (4th Dep't 1977); *Christ v. Lake Erie Distributors,

Inc.*, 51 Misc. 2d 811 (Sup Ct, Erie County 1966), *order aff'd on other grounds*, 28 A.D.2d 817

(4th Dep't 1967), *and order aff'd*, 28 A.D.2d 825 (4th Dep't 1967).  *Accord, Doyle v. Goodnow*

---

[6] Shareholder Plaintiffs lost in Moroccan Litigation 1 and  have twice failed to have a Moroccan court appoint a judicial administrator on such grounds.  *Supra* at p. 8-9.

[7] New York courts look to the substance of allegations, not to how the parties characterize them.  *Tong v. Target,Inc.,* 83 A.D.3d 1046 (2d Dep't 2011).  When the substance of a non-New York claim dos not clearly correspond to the substance of any claim under New York law, "the Court must apply the statute of limitations that applies to the 'most ,,, analogous' cause of action."  *Seghers v.Morgan Stanley DW, Inc.,* No. 06 Civ. 4639, 2007 WL 1404434, at *7 n. 10 (S.D.N.Y. May 10,2007) (internal citations omitted).  Further, ". . .the statute of limitations on a request for declaratory judgment matches that of the underlying substantive right being litigated."  *In re Reyes*, 627 B.R. 569, 580 (Bankr. S.D.N.Y. 2021) (citing *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992), and *Lehman Bros. v. Giddens (In re Lehman Bros.)*, 617 B.R. 231, 244 (Bankr. S.D.N.Y. 2020).

*Flow Association Inc.,* 193 A.D.3d 1309 (3d Dep't 2021) (CPLR 217 applies to compelling corporation to comply with its internal rules); *Valyrakis v. 346 W, 48th Street Housing Development Fund Corp.*, 161 A.D.3d 404 (1st Dep't 2018) (actions of corporation); *Cylich v. Riverbay Corp.*, 74 A.D.3d 646 (1st Dep't 2010) (challenge to election and status of board directors).

Second, the statute of limitations for conversion of company property or for damages from breach of fiduciary duty is three years. *ALP, Inc. v. Moskowitz*, 204 A.D.3d 454 (1st Dep't 2022).

Thus, all claims are untimely. The governance claims were brought fourteen months after the December 2020 acts at issue and more than three years after New York Litigation 1 began. The misappropriations claims were brought more than four years after the last alleged acts occurred, and much longer after other acts occurred. Complaint Exhibit 2.

## VII.   PLAINTIFFS ARE NOT PROPER DERIVATIVE PLAINTIFFS, BECAUSE THEY HAVE CONFLICTS OF INTEREST WITH BPM.

Plaintiffs suing derivatively are improper plaintiffs when they have actual or potential conflicts of interests with the entity they represent and are disqualified from acting as representative in this capacity. *Ryan v. Aetna Life Ins. Co.*, 765 F.Supp.133, 135 (S.D.N.Y. 1991). The Court should apply "a strict standard" in scrutinizing for conflicts. *Id. Priestley v. Comrie*, No. 07 CV 1361(HB), 2007 WL 4208592, at *6 (S.D.N.Y. Nov. 27, 2007) dismissed derivative claims, because of the parties' other pending litigation, economic antagonisms between plaintiff and the entity, and the "magnitude" of plaintiff's personal interests compared to her interests in the action.

The shareholder Plaintiffs have brought numerous suits against Belmamoun in New York and Morocco. They are advancing their personal interest. Their position is economically antagonistic to BPM, by trying to prevent BPM and its other 50% shareholders from gaining access to FinCo's records and learning what FinCo and Toporek did with BPM's substantial *$4 million* investment, so that BPM can protect its assets and comply with Moroccan law as to foreign investments. If

Plaintiffs were protecting *BPM's* interests, they would insist on this disclosure., but that would be against FinCo's interests.  The magnitude of Plaintiffs' interests overwhelms this single derivative action, since their true interests lie in self-preservation not in furthering BPM's interests.  This is just an attempt to protect themselves masked as a concerned shareholder derivative suit.

## VIII.   FINCO HAS NO STANDING.

FinCo must establish both constitutional and prudential standing.  *Levin v. American Document Services, LLC*, 828 Fed.Appx. 788, 791 (2d Cir. 2020) (quoting *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014)), and must do so for each claim.  *Doe v. Columbia University*, 551 F.Supp.3d at 455 (internal quotations marks and citations omitted); *see Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (citations omitted).

Constitutional standing requires (1) a concrete, particularize, actual or imminent dinjury in fact; (2) a causal connection between the injury and defendant's conduct; and (3) the injury is likely to be redressed by a favorable decision.  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) (citation omitted).  FinCo must "assert [its] own legal rights and interests, and [it] cannot rest [its] claim to relief on the legal rights or interests of third parties."  *Levin*, 828 Fed.Appx. at 791 (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975)).  In *Levin*, 828 Fed.Appx. at 971, the plaintiffs lacked constitutional standing to seek declaratory relief and lacked prudential standing because "they were neither parties to, nor third-party beneficiaries of, the assignments" of their mortgages.  *See also Rajamin*, 757 F.3d at 85-87.  Lack of prudential standing has denied various claims for declaratory relief.  *See McCarty v. Bank of New York Mellon*, 669 Fed.Appx. 6 (2d Cir. 2016); *Tasini v. New York Times Co., Inc.*, 184 F.Supp.2d 350 (S.D.N.Y. 2002).

Here, FinCo fails to establish constitutional standing because it has not alleged a concrete, particularized, actual, or imminent injury in fact *caused by Belmamoun's personal conduct.*  Rather, BPM is the cause of any injury.  Nor does it allege that a favorable decision will prevent

BPM's *continuing* to enforce its right to access to financial records to comply with Moroccan law.

FinCo also fails to establish prudential standing, because it has no direct injury from Belmamoun.  Belmamoun owes no statutory, common law, or contract duty to FinCo.  It does not and cannot allege independent direct injury from Belmamoun.  As they admit by bringing a derivative claim, the claims for lack of authority belong to BPM.  As in the cases cited above, FinCo is merely a third party.  Not owning the claim at time of the acts makes one a third party without standing.  *In re Bank of New York Derivative Litigation*, 320 F.3d 291 (2d Cir. 2003); *see Smith v. Stevens*, 957 F.Supp.2d 466 (S.D.N.Y. 2013); *Bartfield v. Murphy*, 578 F.Supp.2d 638 (S.D.N.Y. 2008) (even owners have no direct injury).  Indeed, since the shareholders cannot assert a direct claim for injuries to BPM, *Buhannic v. American Arbitration Association*, 18 Civ. 2430 (ER), 2019 WL 4735005, at *4 (S.D.N.Y. Sept. 27, 2019), *ipso facto,* third-party FinCo cannot.  FinCo's remedies, if any, lie against BPM for breach of the SPA.

## IX.    THE COMPLAINT FAILS TO STATE A CLAIM.

A FRCP 12(b)(6) motion should be granted unless the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Further, "a legal conclusion couched as a factual allegation" is not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 678.  "A pleading is conclusory if it tenders naked assertion[s] devoid of further factual enhancement, offers a formulaic recitation of the elements of a cause of action, and does not provide factual allegations sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Myers v. Moore*, 326 F.R.D. 50, 59 (S.D.N.Y. 2018) (quotation marks and citations omitted).

FinCo's claim against Belmamoun alleges no statutory, common law, or contractual duty that Belmamoun owed FinCo; its conclusory allegations at best only involve duties of Belmamoun

to BPM.  Complaint ¶¶ 28-36.  This alone make it insufficient.

The shareholder Plaintiffs' allegation of conversion of BPM property are also conclusory.  While the Complaint attaches a general list of "suspicious activity," Exhibit 2, there are no specifics as to date or places to which Belmamoun is entitled to be able to defend, particularly on personal jurisdiction and statute of limitation.  In fact, these alleged acts all took place before May 2018, and often many years before, and almost all in Morocco.  Belmamoun Decl. ¶¶22, 68.

The shareholder Plaintiffs' governance allegations rely almost entirely on bare bones legal conclusions that Belmamoun had no legal authority to act on behalf of BPM.  Complaint ¶¶ 17-27.  But in fact, the Complaint concedes that Article of Association 14.2 provides that the term of officers expires "at the end of the meeting of the Ordinary General Meeting that rules on  the financial statements for the past fiscal year . . . . ," and the Complaint contains no allegations about whether there was such a general meeting and if so, what happened.  In fact, there was a general meeting in December 2021, and because there was a stalemate, nothing happened.  Belmamoun Decl. ¶87.  Shareholder Plaintiffs' own acts prevent a meeting and then use those acts to deprive BPM of an officer to protect its interests.  As Mr. Hanane opines, under Moroccan law, Mr. Belmamoun remains Chairman and CEO until the shareholders affirmatively vote to replace him or the Moroccan court appoints a judicial administrator.  Hanane Decl. ¶¶20-25, 30-37.

Not surprisingly, shareholder Plaintiffs fail to disclose that (i) final orders of the Moroccan Court have declared that the meeting they purported to hold in April 2019, was illegal and void, and that Belmamoun is the Chairman and CEO of BPM and remains so in the Moroccan Trade Registry.  Belmamoun Decl. ¶55; Hanane Decl. ¶¶23-25; and (ii)  the Moroccan courts have twice refused their application to appoint a judicial administrator.  Belmamoun Decl. ¶¶60, 74-75.

Finally, the Complaint does not plead *with particularity and detail* the claims of

"fraudulent prosecution."  It does not "specify the statements it claims were false or misleading, give particulars as to the respect in which [Plaintiffs] contend[] the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *In re Refco Securities Lit.*, 759 F.Supp.2d 301, 316 (S.D.N.Y. 2010).

## X.    THE COMPLAINT IS BARRED BY THE SUBSTANTIVE PROTECTIONS OF NEW YORK'S ANTI-SLAPP STATUTE.

In 2020, New York expanded its anti-SLAPP Act beyond public interest matters to protect private claims based upon any "lawful conduct … in furtherance of the exercise of the constitutional right of petition."  NY CIV RTS §76-a(1)(a)(2).  The phrase "the constitutional right of petition" has long included the right to bring *private* litigation, such as New York Litigation. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (right to access courts is "but one aspect of the right of petition.").  This "right of petition" is borrowed from other states, which protect  private lawsuits.  *See* Cal. Civ. Proc. Code §425.16 (2019); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1116 (Cal. 1999); *see also Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal.4th 53, 61 (Cal. 2002); *Navellier v. Sletten*, 29 Cal.4th 82 (Cal. 2002); *Trinity Risk Mgmt., LLC v. Simplified Labor Staffing Sols., Inc.*, 59 Cal.App.5th 995, 1004 (Cal. Ct. App. 2021).  *Harris v. American Accounting Association*, 5:20-CV-01057 (MAD/ATB), 2021 WL 5505515, at *14-15 (N.D.N.Y. Nov. 24, 2021), found plaintiff's threat of crippling legal fees to intimidate the defendants and the subsequent commencement of litigation, were "precisely the type of conduct against which New York's anti-SLAPP statute was designed to protect."

There is a clear pattern here.  This action, like New York Litigation 2, is a direct response to BPM's constitutionally-protected right to petition the courts in New York Litigation 1 in order to  intimidate BPM/Belmamoun and drain their resources.  Plaintiffs have already filed multiple suits in Morocco, and had pending in New York Litigation 1, with the same claims or defenses,

but chose to file this suit and New York Litigation 2 (i) shortly after BPM renewed its demand for financial records and filed a renewed Order to Show Cause in New York Litigation 1; (ii) less than two months after that Court held that Belmamoun's authority as Chairman and CEO was no longer in dispute; and (iii) four months after filing an identical suit, Moroccan Litigation 3,when they had already lost other Moroccan Litigation.  They did so when there was ample opportunity to raise the governance issues again in New York Litigation 1 and in Morocco.  Under these circumstances, the subsequent commencement of yet another litigation violates the anti-SLAPP statute.

While the Second Circuit has held that the *procedures* of a state's anti-SLAPP statute do not apply in federal court, *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020), the substantive protections do apply.  "Courts have uniformly found the anti-SLAPP amendment to apply [substantively] to diversity actions."  *Kesner v. Buhl*, 20 Civ. 3454 (PAE), 2022 WL 718840, at *11 (S.D.N.Y. Mar. 10, 2022); *Palin v. New York Times Co.*, 510 F.Supp.3d 21, 26 (S.D.N.Y. 2020) (anti-SLAPP statute's substantive provisions applicable in federal court); *Coleman v. Grand*, 523 F.Supp.3d 244, 257-58 (E.D.N.Y. 2021).  Belmamoun is not seeking to  apply any anti-SLAPP Act procedures, but only the substantive provisions of the Act to protect him from this retribution suit against the right to petition the courts through New York Litigation 1.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint in its entirety.

Dated:  August 1, 2022
    New York, New York

GOLENBOCK EISEMAN ASSOR BELL
    & PESKOE LLP


By:____s/s Michel S. Devorkin____
Michael S. Devorkin
James Paulose (*SDNY admission pending*)
711 Third Avenue, 17th Floor
New York, New York 10017
(212) 907-7300

*Counsel for Defendant Omar Belmamoun*