**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| FINCO PRIME CONSULTING CORPORATION, SWEETPEA VENTURES INC., MJT PARK INVESTORS, INC., MICHAEL TOPOREK, AND MATTHEW LIPMAN, derivatively on behalf of BROOKSTONE PARTNERS MOROCCO S.A., | No. 22-cv-00952 (DLC) |
| Plaintiffs, | |
| - vs - | |
| OMAR BELMAMOUN, | |
| Defendant, | |
| and | |
| BROOKSTONE PARTNERS MOROCCO S.A., | |
| Nominal Defendant. | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OMAR BELMAMOUN'S MOTION TO DISMISS VERIFIED COMPLAINT**

**NIXON PEABODY LLP**

Daniel A. Schnapp
55 West 46th Street
New York, NY 10036-4120
Telephone: (212) 940-3000
dschnapp@nixonpeabody.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ........................................................................................1

COUNTERSTATEMENT OF FACTS ............................................................................2

ARGUMENT ....................................................................................................................2

POINT I

    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ..........2

        A.    New York's Long-Arm Statute Permits Personal
              Jurisdiction Over Defendant ...........................................................3

              i.    Defendant transacts business within New York .................3

              ii.    Defendant Committed Tortious Acts in Morocco
                    Causing Injury to New York Citizens within
                    New York.............................................................................5

        B.    Specific Personal Jurisdiction Over Defendant Comports
              with Due Process.............................................................................6

POINT II

    THE PENDING SERVICE ON BPM IS NOT A BASIS TO DISMISS
    THE COMPLAINT ...............................................................................................8

POINT III

    THIS COURT HAS SUBJECT MATTER JURISDICTION.................................9

POINT IV

    THE SOUTHERN DISTRICT OF NEW YORK IS THE PROPER
    FORUM ...............................................................................................................10

        A.    This Court Should Defer to Plaintiffs' Choice of Forum ..............10

        B.    Both Private and Public Interest Factors Weigh Strongly in
              Favor of Litigating This Action in the Southern District of
              New York.........................................................................................12

              i.    Private Factors Do Not Tilt Heavily Towards the
                    Foreign Forum ...................................................................12

ii.     Public Factors Do Not Tilt Heavily Towards the
                Foreign Forum ..................................................................13

POINT V

        THERE IS NO BASIS FOR THE COURT TO ABSTAIN ................................15

POINT VI

        THIS ACTION IS NOT BARRED BY EITHER CLAIM OR ISSUE
        PRECLUSION..........................................................................................17

                A.      Claim Preclusion...........................................................................17

                B.      The Complaint Should Not Be Dismissed for Issue
                        Preclusion........................................................................19

POINT VII

        THE FIRST FILED RULE DOES NOT APPLY TO THIS ACTION ................20

POINT VIII

        PLAINTIFFS' ALLEGATIONS ARE SUFFICIENT TO STATE A CLAIM.....20

POINT IX

        PLAINTIFFS' CLAIMS ARE TIMELY..............................................................22

POINT X

        FINCO HAS STANDING TO BRING ITS DECLARATORY JUDGMENT
        ACTION ..................................................................................................24

POINT XI

        THERE IS NO CONFLICT OF INTEREST BARRING PLAINTIFFS'
        CLAIMS ..................................................................................................26

POINT XII

        NEW YORK'S ANTI-SLAPP STATUTE DOES NOT BAR PLAINTIFFS'
        CLAIMS ..................................................................................................27

CONCLUSION...................................................................................................................30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*,
   96 F.Supp.3d 182 (S.D.N.Y. 2015) ...................................................................14

*Genger ex rel. AG Props. Co. v. Sharon*,
   910 F.Supp.2d 581 (S.D.N.Y. 2012)..................................................................17

*Estate of Albin v. Mertz, LLC*,
   Case No. 05 Civ. 3440, 2006 WL 8461442 (S.D.N.Y. 2006) .................................22

*Allied Dynamics Corp. v. Kennametal, Inc.*,
   965 F.Supp.2d 276 (E.D.N.Y. 2013) ...................................................................3

*Ampa Ltd. v. Kentfield Capital LLC*
   Case No. 00 CIV 0508, 2001 WL 204198 (S.D.N.Y. March 1, 2001).....................5

*Apollo Global Mgmt., Inc. v. Cernich*,
   Index No. 653234/2020, 2022 WL 2612429 (N.Y. Sup. Ct. N.Y. Cnty. July 8,
   2022) .........................................................................................................23

*Carlstrom v. Livforsakring*,
   No. 19cv11569, 2020 WL 7342753 (S.D.N.Y. Dec. 14, 2020)..............................15

*Carroll v. Trump*,
   Case No. 20-CV-7311, 2022 WL 748128 (S.D.N.Y. March 11, 2022) ...................29

*Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*,
   882 F.Supp.2d 396 (E.D.N.Y. 2012) ..................................................................19

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
   90 F.Supp.3d 97 (S.D.N.Y. 2015).....................................................................6, 7

*Chloe v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (S.D.N.Y. 2010).....................................................................2, 3, 8

*Coleman v. Grand*,
   523 F.Supp.3d 244 (E.D.N.Y. 2021) ..................................................................28

*Cylich v. Riverbay Corp.*,
   74 A.D.3d 646 (1st Dep't 2010) ........................................................................23

*DiRienzo v. Philip Servs. Corp.*,
   294 F.3d 21 (2d Cir. 2002).........................................................................10, 13

*Doe v. Columbia Univ.*,
  551 F.Supp.3d 433 (S.D.N.Y. 2021)............................................................................20

*Esheva v. Siberia Airlines*,
  499 F.Supp.2d 493 (S.D.N.Y. 2007)............................................................................14

*Goldman v. White Plains Ctr. for Nursing Care, LLC*,
  9 Misc.3d 977 (Sup. Ct. N.Y. Cnty. 2005) ................................................................23

*Gucci America, Inc. v. Frontline Processing Corp.*,
  721 F.Supp. 2d 228 (S.D.N.Y. 2010)............................................................................5

*Harris v. American Accounting Assoc.*,
  2:20-CV-01057, 2021 WL 5505515 (N.D.N.Y. Nov. 23, 2021)................................30

*Kern v. Joyce*,
  857 Fed.Appx. 691 (2d Cir. 2021) ..............................................................................20

*Kesner v. Buhl*,
  Case No. 20 Civ. 3454, 2022 WL718840 (S.D.N.Y. March 10, 2022)....................28

*Kingston Capital Mgmt., L.P. v. Vitek*,
  No. 19cv3170, 2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)............................15, 16

*Kriesler v. Second Ave. Diner Corp.*,
  731 F.3d 184 (2d Cir. 2013)................................................................................24, 25

*Kytel Intern Grp., Inc. v. Rent A Ctr. Inc.*,
  43 Fed.Appx. 420 (2d Cir. 2002) ................................................................................20

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020)..........................................................................................27

*Lipman v. Rodenbach*,
  852 Fed.Appx. 578 (2d Cir. 2021) ..............................................................................20

*Local Unions 20 v. United Brotherhood of Carpenters and Joiners of America*,
  223 F.Supp. 2d 491 (S.D.N.Y. 2002)............................................................................8

*Margolin v. Savage Youth the Film, LLC*,
  68 Misc. 3d 777 (Sup. Ct. Suff. Cnty. May 11, 2020).................................................4

*Mazuma Holding Corp. v. Bethke*,
  1 F.Supp.3d 6 (E.D.N.Y. 2014) ............................................................................15, 16

*Mobarek v. Mowad*,
  117 A.D.3d 998 (2d Dep't 2014) ................................................................................22

*National Academy of Television Arts and Scis., Inc. v. Multimedia Sys. Design, Inc.*,
   551 F.Supp.3d 408 (S.D.N.Y. 2021)................................................................27, 28, 29

*National Union Fire Ins. Co. of Pittsburgh, P.A. v. BP Amoco, P.L.C.*,
   Case No. 03 Civ. 0200, 2003 WL 21180421 (S.D.N.Y. May 20, 2003).....................9, 13, 14

*In re Optimal U.S. Litig.*,
   847 F.Supp.2d 244 (S.D.N.Y. 2011)................................................................. *passim*

*Owens v. Turkiye Halk Bankasi A.S.*,
   Case No. 20cv02648, 2021 WL 638975 (S.D.N.Y. Feb. 16, 2021) ........................................15

*Priestly v. Comrie*,
   Case No. 07 CV 1361, 2007 WL 4208592 (S.D.N.Y. Nov. 27, 2007)....................................26

*R.Maganlal & Co. v. M.G. Chem. Co., Inc.*,
   942 F.2d 164 (2d Cir. 1991)................................................................................14

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
   757 F.3d 79 (2d Cir. 2014)................................................................................25

*S.E.C. v. Haligiannis*,
   470 F.Supp.2d 373 (S.D.N.Y. 2007)........................................................................18

*Scheeler v. Buffalo Wire Works Co., Inc.*,
   50 Misc.2d 158 (Sup. Ct. Erie Cnty. 1966) ................................................................23

*Skelton Fibres Ltd. v. Canas*,
   No. 96 Civ. 6031, 1997 WL 97835 (S.D.N.Y. March 6, 1997).............................................15

*Sparrow Fund Management LP v. MiMedx Group, Inc.*,
   Case No. 18 Civ 4921, 2019 WL 1434719 (S.D.N.Y. March 31, 2019)....................................5

*TechnoMarine SA v. Giftports, Inc.*,
   758 F.3d 493 (2d Cir. 2014)..........................................................................17, 18

*Tuscano v. Tuscano*,
   403 F.Supp.2d 214 (E.D.N.Y. 2005) ......................................................................26

*United Steel Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*,
   710 F.3d 470 (2d Cir. 2013)..............................................................................24

*Wamai v. Industrial Bank of Korea*,
   No. 21cv325, 2021 WL 3038402 (S.D.N.Y. July 14, 2021) ................................................15

*Wimbledon Fin. Master Fund, Ltd. v. Hallac*,
    192 A.D.3d 617 (1st Dep't 2021) .......................................................................23

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000).................................................................................10

*Woodford v. Community Action Agency of Green Cnty.*,
    239 F.3d 517 (2d Cir. 2001)...............................................................................15

**Statutes**

CRL §76-a...................................................................................................27, 28, 29

CPLR 3211(g)....................................................................................................28, 29

CPLR 217..........................................................................................................22, 23

CPLR 302(a)................................................................................................2, 3, 4, 5

FRCP 12....................................................................................................................29

FRCP 56....................................................................................................................29

FRCP 19(a)..................................................................................................................8

FRCP 23.1................................................................................................................27

FRCP 44.1................................................................................................................13

BCL § 619.........................................................................................................22, 23

## PRELIMINARY STATEMENT

Plaintiffs FinCo Prime Consulting Corporation ("FinCo") and MJT Park Investors, Inc., Sweetpea Ventures, Inc., Michael Toporek, and Matthew Lipman (collectively "Shareholder Plaintiffs") derivatively and on behalf of Nominal Defendant Brookstone Partners Morocco S.A. ("BPM") (FinCo and Shareholder Plaintiffs together referred to as "Plaintiffs"), by and through their counsel, Nixon Peabody LLP, respectfully submits this Memorandum of Law in Opposition to Defendant Omar Belmamoun's Motion to Dismiss the Verified Complaint, along with the Declaration of Daniel Schnapp, dated August 22, 2022 with exhibits ("Schnapp Decl.)," the Declaration of Perry Jacobson dated August 22, 2022 ("Jacobson Decl."), the Declaration of Soukaina Ben Chekroun dated August 22, 2022 with accompanying exhibits ("Ben Chekroun Decl."), and the declaration of Laila Slassi dated August 22, 2022 with accompanying exhibits ("Slassi Decl.").

Defendant, whose term as Chief Executive Officer ("CEO") of BPM, and whose authority to act on BPM's behalf expired on December 2, 2020, has continuously and improperly caused BPM to take several unauthorized corporate actions, including making demands from and instituting litigation against FinCo for the inspection of books and records pursuant to certain Shareholders Purchase Agreements (collectively referred to throughout this Memorandum of Law as the "SPA") which began in November 2018 and are ongoing.

Plaintiffs further seek to remedy many wrongdoings committed by Defendant as BPM's CEO, including, among others, breach of fiduciary duties, waste of corporate assets in pursuing and funding an unauthorized litigation against FinCo, and improperly and illegally utilizing BPM's funds as his own personal bank account to purchase personal items such as massages and family trips.

Defendant's motion to dismiss contains nothing but conclusory and superficial legal and procedural arguments.  Indeed, Defendant makes more than ten separate arguments for dismissal, including, but not limited to, arguments on personal jurisdiction, subject matter jurisdiction, claim and issue preclusion, failure to state a claim, and forum *non conveniens*.  Yet, Defendant's "kitchen sink" approach to his motion lacks merit and substance and, as shown below, wastes this Court's time.

## COUNTERSTATEMENT OF FACTS

The Court is respectfully referred to the Verified Complaint (ECF No. 1) (referred to herein as "Complaint" or "Compl."), Schnapp Decl., Jacobson Decl., and Ben Chekroun Decl. for all facts and procedural history pertinent to Plaintiffs' opposition to Defendant's motion.

## ARGUMENT

## POINT I

## THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

For this Court to determine personal jurisdiction over Defendant, a non-domiciliary, it must engage in a two-step analysis beginning with looking at New York's long-arm statue.  *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 163 (S.D.N.Y. 2010).  New York's long arm statute provides, in part, that a court may exercise personal jurisdiction over a non-domiciliary who "in person or through an agent"

> transacts any business within the state . . . or commits a tortious act without the state causing injury to a person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CPLR 302(a).

If the Court determines it maintains personal jurisdiction over Defendant pursuant to the long-arm statute, then the next step in the analysis is to assess "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe*, 616 F.3d at 164. The Due Process analysis for personal jurisdiction "has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry." *Id.*

### A. New York's Long-Arm Statute Permits Personal Jurisdiction Over Defendant

### i. Defendant transacts business within New York

To satisfy the "transacting business" prong of CPLR 302(a)(i), "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F.Supp.2d 276, 291 (E.D.N.Y. 2013). There are several factors utilized to determine whether a defendant transacted business within New York for the purposes of long-arm jurisdiction:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Id.* Furthermore, "a suit will be deemed to have arisen out of a party's activities in New York if there is a . . . substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* "[P]roof of one transaction, or a single act, in New York has been deemed sufficient to invoke long-arm jurisdiction even though the defendant never enters New York." *Id.* at 293. (internal quotation omitted). Here, this Court has jurisdiction over Defendant pursuant to CPLR 302(a)(i) for FinCo's declaratory judgment action.

Defendant transacted business in New York as CEO of BPM, by causing BPM to invest $4 million in FinCo, a New York corporation, and to become a stockholder in FinCo by executing the SPA.   Declaration of Omar Belmamoun ("Belmamoun Decl.") ¶ 12.   The SPA is an "agreement made and to be entirely performed within the State of New York."   *See* Belmamoun Decl. ¶ 8.1.  The SPA is also "governed and by and construed under the laws of the State of New York."   *Id.*  The SPA also requires notices to FinCo be sent to a New York address.  *Id.* ¶ 8.8.

FinCo's action for declaratory relief as to its obligations to provide BPM with an inspection of books and records arises out of the aforementioned business activities of Defendant in New York as Defendant has relied upon this business relationship between BPM and FinCo, as well as the provisions of the SPA to continuously issue demands for inspection of records and to prosecute a lawsuit against FinCo in New York State Supreme Court.  *See e.g. Margolin v. Savage Youth the Film, LLC*, 68 Misc. 3d 777, 785 (Sup. Ct. Suff. Cnty. May 11, 2020) (finding long-arm jurisdiction because defendants "do not dispute that they retained a New York law firm to provide legal representation for their enterprise"); *see* Compl. ¶¶ 30-31.

Defendant claims that BPM's filing of the action for the inspection of books and records against FinCo is not a transaction that in and of itself subjects Defendant to personal jurisdiction because that was an act of BPM, not Defendant.  Memo at 11.[1]  As an initial matter, as described above, the filing of the December 2018 lawsuit is not the only transaction in New York subjecting Defendant to personal jurisdiction.   In any event, Defendant, *in his individual capacity*, caused BPM to initiate that lawsuit without the requisite authority.  Compl. ¶ 31.

---

[1] Defendant also argues that his mere appearance in other New York lawsuits does not subject him to personal jurisdiction.  Memo at 12.  However, it is not Defendant's *appearance* in other New York lawsuits that subject him to personal jurisdiction, it is his business transactions (CPLR 302 (a)(i)), which include investing in FinCo and causing BPM to initiate a New York State lawsuit against FinCo.

Defendant's legal support for his argument is also distinguishable.   In *Sparrow Fund Management LP v. MiMedx Group, Inc.,* when the Court held that a company's lawsuit could not serve as basis for personal jurisdiction over its CEO in a subsequent matter, there were no allegations that the CEO acted in his individual capacity when initiating the lawsuit.   Here, Defendant acted without authority and in his self-interest when he initiated the New York Litigation 1.  Case No. 18 Civ 4921, 2019 WL 1434719, at *12 (S.D.N.Y. March 31, 2019).

*Ampa Ltd. v. Kentfield Capital LLC*, cited by Defendant, is similarly inapposite.   In that case the Court's denial of personal jurisdiction over individual officers did not hinge – as Defendant represents –  on the company's initiation of a prior lawsuit.  Case No. 00 CIV 0508, 2001 WL 204198, at *3, 4 (S.D.N.Y. March 1, 2001).  Rather, the Court found personal jurisdiction lacking because the third-party plaintiffs did not articulate how the company's actions were attributable to the individual officers and failed to allege the individual officers' connection to the forum.  Case No. 00 CIV 0508, 2001 WL 204198, at *3, 4 (S.D.N.Y. March 1, 2001)    Here, Plaintiffs have established these points.  *Supra*, p. 4.

### ii.  Defendant Committed Tortious Acts in Morocco Causing Injury to New York Citizens within New York

In addition, pursuant to CPLR 302(a)(iii), this Court may exercise jurisdiction over "any non-domiciliary . . . who in person or through an agent . . .  commits a tortious act without the state causing injury to person or property within the state."  In particular, there are five elements needed to satisfy CPLR 302(a)(iii):

> (1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce.

*Gucci America, Inc. v. Frontline Processing Corp.*, 721 F.Supp. 2d 228, 241 (S.D.N.Y. 2010).

Here, this Court maintains personal jurisdiction over Defendant in connection with the derivative actions as each of these factors are met.  First, Defendant, while presumably currently in Morocco, misused and misappropriated BPM funds, and took other self-interested actions to BPM's detriment and Shareholder Plaintiffs' derivative actions arise from these self-interested actions and the injury caused to BPM.  Compl. ¶¶ 29; 47-65.  Defendant argues that BPM's funds were taken from BPM's account in Morocco (Memo at 11) and thus, the violations and injury are located in Morocco.  However, BPM suffered injury in New York, for example, because it has been forced to spend significant funds on Defendant's unauthorized lawsuit against FinCo in New York State Court which was initiated in 2018 and is still ongoing today.  Compl. ¶ 29.

Additionally, Defendant should have reasonably expected his actions to have consequences in New York State as Shareholder Plaintiffs are all New York residents, and, as stated above, BPM has suffered injury in New York State due to the fact that BPM has been litigating a lawsuit Defendant initiated for almost four years in New York.  Lastly, Defendant, as CEO of BPM, invested in FinCo, a New York State Corporation, and thus, through BPM's investments, derives substantial revenue from international commerce.

**B. Specific Personal Jurisdiction Over Defendant Comports with Due Process**

Personal jurisdiction over Defendant here also comports with due process passing both the minimum contacts test and the reasonableness inquiry.  Initially, "[b]ecause the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F.Supp.3d 97, 108 (S.D.N.Y. 2015).  As stated above, Plaintiffs have satisfied the long-arm statute and thus, have satisfied the requirements of due process.

Nonetheless, each prong of the due process analysis has been met.  First, the test for "minimum contacts" is "whether a defendant purposefully availed itself of the privilege of doing business in the forum state and could reasonably anticipate being haled into court there."  *Chatwal Hotels*, 90 F.Supp.3d at 107.  Here, as stated above, Defendant has purposefully availed itself of the privilege of doing business in New York being former CEO of BPM which invested as a shareholder of FinCo, a New York corporation, and whose investments were made pursuant to SPAs which are governed by the laws of New York.  Compl. ¶ 30; Belmamoun Decl. Ex. 1 ¶ 8.1. Furthermore, Defendant, unlawfully – and without proper authorization from the BPM Board of Directors – initiated a lawsuit in New York State Supreme Court against FinCo for the inspection of books and records, wasting BPM's corporate funds and damaging BPM.  *See e.g.* Compl. ¶¶ 31, 34.  As such, given that he initiated a lawsuit against FinCo in New York and that FinCo as well as Shareholder Plaintiffs are a residents of New York, Defendant could have more than reasonably anticipated being sued in New York State by any and all Plaintiffs in this matter.

Furthermore, there are five factors utilized to determine "reasonableness" of an exercise of jurisdiction:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial . . . system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.

*Chatwal Hotels*, 90 F.Supp.3d at 107-08.

Here, Defendant cannot legitimately claim that he is burdened by this Court's exercise of jurisdiction – he is a sophisticated international businessman with existing relationships with New York corporations and legal counsel and has ample familiarity with New York judicial systems. Any inconvenience that Defendant claims he may face from litigating in this forum are meritless

because he has initiated an action on behalf of BPM in the New York State Supreme Court which

has been ongoing for almost four years, and retained multiple different New York counsel to do

so.  Compl. ¶¶ 31-34.  Furthermore, if this case were litigated in Morocco, the burden would then

simply fall on Plaintiffs – *all* of whom are New York citizens.  As each of the Plaintiffs is a New

York resident, obtaining convenient and effective relief is more likely to occur in this forum.  *See*

*Chloe*, 616 F.3d at 173 (finding this factor "favors New York as the forum state since a state . . .

has a manifest interest in providing effective means of redress for its residents.")

## POINT II

### THE PENDING SERVICE ON BPM IS
### NOT A BASIS TO DISMISS THE COMPLAINT

Defendant also argues this Complaint should be dismissed because BPM has not yet been

served and FRCP 19(a)(1) mandates joinder of an indispensable party.  Memo at 12.

Initially, Plaintiffs have made multiple efforts to serve BPM, though unsuccessful.  *See*

Slassi Decl. ¶¶ 10-12.  Plaintiffs are continuing their attempts to serve BPM.  *Id.* ¶ 13[2].

Even if service is not completed and BPM may be considered an indispensable party to the

derivative claims, Courts in this District have rectified this situation, rather than dismiss an action

outright, for example, by directing plaintiffs to serve the pleading on that necessary party.  *See e.g.*

*Local Unions 20 v. United Brotherhood of Carpenters and Joiners of America,* 223 F.Supp. 2d

491, 508 (S.D.N.Y. 2002) (finding "District Council may very well be an indispensable party under

Rule 19(a); but the situation is easily remedied by designating the District Council as a party

plaintiff with respect to this claim and directing plaintiffs to serve a copy of the SAC upon the

District Council"); *see also* FRCP 19(a)(2).  Here, there is no need for the Court to direct Plaintiffs'

---

[2] While Plaintiffs are continuing to attempt service on BPM, Plaintiffs may have been provided incorrect information as to BPM's address by Defendant.

service of the Complaint on BPM, Plaintiffs have made and continue to make good faith attempts to complete service, and therefore, there is no basis to dismiss the Complaint on this ground.

**POINT III**

**THIS COURT HAS SUBJECT MATTER JURISDICTION**

Blatantly ignoring this Court's previous ruling that subject matter jurisdiction exists on the basis of diversity jurisdiction, Defendant once again raises the argument that this Court lacks subject matter jurisdiction over this lawsuit.  Memo at 12; ECF No. 24.

First, Defendant reasserts and "preserves" its claim that this Court lacks diversity jurisdiction.  However, as this Court has addressed and resolve the question of diversity jurisdiction, Defendant's redundant and should be disregarded as moot.

Second, Defendant claims that the Moroccan courts have exclusive jurisdiction over shareholder derivative lawsuits, and therefore this Court does not.  Memo at 12.  Defendant's argument, in part, relies upon his assertion that there is no international component of this proceeding connecting the case to the United States or this forum.  *See* Declaration of Yousef Hanane ¶ 46.  However, there are plainly international components to this litigation tying this case to the United States and this forum.  FinCo is a New York corporation (and a plaintiff) and the derivative claims, in part, allege that Defendant misused BPM funds by initiating an unauthorized lawsuit against FinCo in New York State Court.  *See* Compl. ¶¶ 29, 31-32; Schnapp Decl. ¶ 8.

Finally, without any legal support whatsoever, Defendant also claims that, "common sense and judicial restraint" suggest that this Court "should not control a foreign corporation with no presence here as to its governance."  Memo at 12.  The fact that BPM is a foreign corporation, or foreign law may apply, does not impact this Court's ability to adjudicate this matter justly.  *See e.g. National Union Fire Ins. Co. of Pittsburgh, P.A. v. BP Amoco, P.L.C.*, Case No. 03 Civ. 0200, 2003 WL 21180421, at *10 (S.D.N.Y. May 20, 2003).  Indeed, diversity jurisdiction (which this

9

Court has held that it maintains) blatantly takes into account that this Court will often be faced with the adjudication of disputes involving foreign parties. Furthermore, as described below, Plaintiffs are all New York residents and were injured in New York State and New York law applies to the vast majority of the issues and claims at play, and thus, contrary to Defendant's misguided assertion, common sense dictates that this Court is the most appropriate forum to oversee this matter.

POINT IV

**THE SOUTHERN DISTRICT OF NEW YORK IS THE PROPER FORUM**

Defendant's argument that this action should be dismissed pursuant to forum *non conveniens* is also meritless. The Second Circuit Court of Appeals has adopted a three-part analysis to determine whether to dismiss a case due to forum *non conveniens*. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28-33 (2d Cir. 2002). The "first level of inquiry" is "to determine what deference is owed a plaintiff's choice of forum." *Id.* at 28. Next, "a forum non conveniens motion cannot be granted absent an adequate alternative forum." *Id.* at 29. Finally, a Court will look to both private and public interest factors. *Id.* at 29-31.

**A. This Court Should Defer to Plaintiffs' Choice of Forum**

This Court should apply "a strong favorable presumption" to Plaintiffs' choice of forum and assume that choice will stand "unless the defendant can demonstrate that reasons exist to afford it less deference." *Id.* at 28. This Court should take into account the "convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *In re Optimal U.S. Litig.*, 847 F.Supp.2d 244, 250-51 (S.D.N.Y. 2011). Deference to the plaintiff "increases as the plaintiff's ties to the forum increase." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000).

Here, this Court must begin with the presumption that Plaintiffs' choice of forum stands particularly because Plaintiffs are all New York residents.  Compl. ¶¶ 10-14.  Furthermore, any potential witnesses to be offered on behalf of Plaintiffs will be available in New York will be readily available to come to New York, even those located in Morocco.  *See e.g.* Jacobson Decl. ¶ 6; Compl. ¶¶ 10-14.   Plaintiffs' records are also located in New York and FinCo maintains a bank account in New York.  *See e.g.* Jacobson Decl. ¶ 4; Compl. ¶¶ 10-14.   Other evidence such as email communications, computer files, court documents, etc., even if partially located in Morocco, can easily be accessed in this forum.  *See e.g. In re Optimal*, 837 F.Supp.2d at 254 ("to the extent there is relevant documentary evidence in Europe, this consideration is given little weight due to technological advances").

Defendant claims that Plaintiffs are merely forum shopping simply because they are displeased with the outcomes of their actions in Morocco and in New York Litigation 1.  Memo at 15-16.   With regard to New York Litigation 1, Defendant argues that Court rejected misappropriation and authority issues but that is a gross mischaracterization of that proceeding. There were no breach of fiduciary duty or other misappropriation claims litigated in that action – it was a Petition seeking inspection of books and records.  Schnapp Decl. ¶¶ 7-8.  Furthermore, as explained herein, the New York State Court's assessment of Defendant's authority was not final and predated many of the significant legal developments in Morocco which demonstrate an ongoing dispute over Defendant's authority.  *See e.g.* Ben Chekroun Decl. ¶¶ 9-22.

The Moroccan litigations referenced by Defendant (Memo at p.15) also do not support the argument that Plaintiffs are forum shopping by bringing this lawsuit in federal court.  For example, two criminal suits in Morocco necessarily do not entail the same civil issues before this Court. Moreover, Moroccan Litigation 1 only concerned the validity of the minutes and deliberations of

the Ordinary General Meeting of BPM and is not, as Defendant represents, "almost identical" to the October 2021 litigation. *See* Ben Chekroun Decl. ¶¶ 9-10. Additionally, the misappropriation issues could not be raised in Moroccan lawsuits as they all involved specific proceedings tailored to the unique issues before the courts, *i.e.* seeking the appointment of a judicial administrator to convene an ordinary general meeting of BPM. *See* Ben Chekroun Decl. ¶¶ 5, 9-22.

## B. Both Private and Public Interest Factors Weigh Strongly in Favor of Litigating This Action in the Southern District of New York

In the third step of the forum *non conveniens* analysis, this Court should "[balance] the private and public interests implicated in the choice of forum." *In re Optimal*, 837 F.Supp.2d at 250. At this step, the burden is on the moving party to demonstrate these factors tilt "heavily in favor of the alternative forum." *Id.* at 251. As demonstrated below, Defendant has failed to meet that burden and this Court should defer to Plaintiffs' choice of forum.

### i. Private Factors Do Not Tilt Heavily Towards the Foreign Forum

"The private interest factors include: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive." *In re Optimal*, 837 F.Supp.2d at 252.

First, all Plaintiffs are residents of New York. Compl. ¶¶ 10-14. Thus, all witnesses in the custody and control of Plaintiffs will be available in New York, including those located in Morocco, and Plaintiffs' records are readily available in New York. Defendant, a critical witness, has had long-standing access to New York counsel and documented involvement in his New York State action against FinCo and thus has no basis to claim that he cannot make himself available as

12

a witness for this proceeding[3].  Nor has Mr. Belmamoun identified any unwilling witnesses he expects to rely on in this case.[4]  To the extent there is documentary evidence of Moroccan origin – "documentary evidence abroad . . . is accorded little weight in this analysis due to technological advances." *In re Optimal*, 837 F.Supp.2d at 258.  Thus, Defendant has failed to meet his burden of demonstrating the private factors tilt heavily in favor of the foreign forum.

### ii.  Public Factors Do Not Tilt Heavily Towards the Foreign Forum

There are "four public interest factors to be weighed in the forum non conveniens inquiry: (1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the "local interest in having localized controversies decided at home;" and (4) avoiding difficult problems in conflict of laws and the application of foreign law." *DiRienzo*, 294 F.3d at 31.

Although it is Defendant's burden to establish that these factors tilt heavily in favor of the foreign of forum limiting deference to Plaintiffs, Defendant only addresses *one* of the public factors – the potential application of foreign law – and still fails to meet his burden on that issue. Memo at 16-17.  Moroccan law would at most apply to the question of Defendant's authority to act as CEO of BPM – only one issue of many present.  This Court is more than equipped to apply foreign law.  *See e.g.* FRCP 44.1; *see also National Union Fire Ins. Co. of Pittsburgh, P.A. v. BP Amoco, P.L.C.*, Case No. 03 Civ. 0200, 2003 WL 21180421, *10 (S.D.N.Y. 2003) ("[b]ecause

---

[3] Furthermore, while Defendant claims he is a citizen and resident of Morocco with "no presence in New York and no recent activity here" (Memo at 16), Defendant listed a New York City address as his residence as recently as September 2021 in an "Official Registration of the Register of Commerce in Morocco for BPM, dated September 27, 2021." *See* Schnapp Decl. Ex. D.

[4] Defendant claims that the "legal experts and accountants" who audited BPM are in Morocco.  Plaintiffs are unaware and skeptical of any audits of BPM that have occurred, but, regardless, for the reasons stated above, this forum prevails as the more appropriate forum due to the availability of witnesses, evidence, and deference to Plaintiffs' choice of forum.

federal courts must often apply foreign law . . . interpreting the contracts according to English law, and instructing a jury on that law if this case should go to trial, are not burdens heavy enough to weight the balance . . . in favor of dismissing the action").   FinCo's obligations to permit Defendant's inspection of documents pursuant to the SPA is governed by New York law.   *See* Belmamoun Decl. Ex. 1 ¶ 8.1.  Also, New York law applies to Shareholder Plaintiffs' tort claims. *See 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*, 96 F.Supp.3d 182, 217 (S.D.N.Y. 2015) (explaining that under "interest-analysis" for tort claims, "the law of the jurisdiction where the tort occurred will . . . apply" and "a tort occurs in the place where the injury was inflicted," *i.e.* "where the plaintiffs are located").   Thus, this argument, without more, is insufficient to justify dismissal.   *See e.g. R.Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 169 (2d Cir. 1991) ("the need to apply foreign law is not alone sufficient to dismiss under the doctrine of forum non conveniens").

Defendant's purported legal authority for his argument is also inapposite.  Although the possible application of foreign law may be a factor, it was one factor among many that, when aggregated, tilted the balance heavily towards the foreign forum.  For example, in *Esheva v. Siberia Airlines*, 499 F.Supp.2d 493, 500-01 (S.D.N.Y. 2007), the Court found that Russia would be a more appropriate forum to litigate an airplane crash that occurred in Russia, involved a Russian airline and no U.S. citizens, and where the scene of the accident, wreckage, victims and descendants of victims, were all located.  Here, there is no accident scene or local victims or descendants to interview.  Even if there are documents located in Morocco, they can be easily obtained in this forum via electronic means.  *See In re Optimal*, 837 F.Supp.2d at 254.

Defendants' other cited cases are also not "similar" to the instant action as they also emphasized other deciding factors, not only the application of foreign law, in granting motions

pursuant to forum *no n conveniens*. *See e.g. Skelton Fibres Ltd. v. Canas*, No. 96 Civ. 6031, 1997 WL 97835, at *6 (S.D.N.Y. March 6, 1997) (placing "great weight on the fact" that it "is a dispute between foreign nationals"); *Kingston Capital Mgmt., L.P. v. Vitek*, No. 19cv3170, 2020 WL 5350492, at *10 (S.D.N.Y. Sept. 4, 2020) (involving litigation that required "massive foreign discovery . . . almost all of which will have to be conducted in compliance" with European law); *Carlstrom v. Livforsakring*, No. 19cv11569, 2020 WL 7342753, at *5 (S.D.N.Y. Dec. 14, 2020) (involving New York litigation initiated by foreign national); *Owens v. Turkiye Halk Bankasi A.S.*, Case No. 20cv02648, 2021 WL 638975, at *4 (S.D.N.Y. Feb. 16, 2021) (according foreign plaintiffs minimal deference); *Wamai v. Industrial Bank of Korea*, No. 21cv325, 2021 WL 3038402, at *7 (S.D.N.Y. July 14, 2021) (finding Korea proper forum in case involving "misconduct by a government-sponsored Korean bank that in large part occurred in Korea").

## POINT V

### THERE IS NO BASIS FOR THE COURT TO ABSTAIN

Defendant also argues this Court should abstain completely from adjudicating this action in light of other ongoing New York State and Moroccan actions, (Memo at 17-18). However, abstention is "only appropriate in 'exceptional circumstances,' where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" *Woodford v. Community Action Agency of Green Cnty.*, 239 F.3d 517, 522 (2d Cir. 2001).

First, before assessing whether abstention is justified, the Court must "make a threshold determination that the federal and state court cases are 'parallel.'" *Mazuma Holding Corp. v. Bethke*, 1 F.Supp.3d 6, 20 (E.D.N.Y. 2014). For purposes of abstention, "federal and state proceedings are 'concurrent' or 'parallel' . . . when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'" *Id.* If there is "any doubt regarding the parallel nature of a federal and state action," then the question of

abstention "should be resolved in favor of the exercise of federal jurisdiction." *Id.* The "burden of persuasion rest[s] on the party opposing the exercise of federal jurisdiction." *Id.* at 20.

Defendant appears to assert both New York Litigation 1 and Moroccan Litigation 3 are the parallel litigations at issue. Memo at 18. As an initial matter, this doctrine does not apply to foreign proceedings, it applies only to concurrent state-court proceedings. Notably, Defendant does not cite any cases in which a foreign lawsuit has served as the basis for a federal court's abstention. New York Litigation 1 also does not constitute a parallel or concurrent lawsuit for the purposes of the abstention analysis. For example, the parties are not identical. In New York Litigation 1, BPM was the petitioner in New York Litigation 1 and FinCo, the respondent. (*see* Schnapp Decl. ¶ 8). Here, Omar Belmamoun is the Defendant, while FinCo and Shareholder Plaintiffs are the Plaintiffs. Furthermore, New York Litigation 1 was a simple inspection of books and records proceeding whereby BPM sought enforcement of a November 2018 demand for documents pursuant to both New York statute and the SPA. *See* Schnapp Decl. ¶¶ 7-8. This federal litigation is not an action for the inspection of books and records. Thus, it is apparent that there is no concurrent or parallel state court action, and the abstention analysis stops there.

Defendant's reliance on *Kingston Capital Management L.P. v. Vitek*, Case No. 19cv3170, 2020 WL 5350492, at *4 for the premise that this Court may abstain to "grant comity to foreign court decisions" is also misplaced. In *Kingston*, the defendants brought a motion to abstain specifically "due to international comity" which was then in turn "treated as a motion to dismiss for lack of subject-matter jurisdiction," and not assessed under the same abstention doctrine that Defendant asks this Court to utilize here. *Id.*

## POINT VI

## THIS ACTION IS NOT BARRED BY EITHER CLAIM OR ISSUE PRECLUSION

In an additional attempt to persuade this Court to dismiss the underlying action, Defendant argues that this litigation is barred by both claim and issue preclusion.  Memo at 24.  However, as detailed below, neither doctrine precluded this action.

### A.  Claim Preclusion

"When a claim has been fully litigated, the doctrine of claim preclusion generally bars the future litigation both of that claim and of any closely related claims." *Genger ex rel. AG Props. Co. v. Sharon*, 910 F.Supp.2d 581, 586-87 (S.D.N.Y. 2012) (finding claim not precluded as case involved "a distinct transaction from the one at issue in the state court action").  The moving party must demonstrate the following conditions for *res judicata* to apply: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *TechnoMarine SA v. Giftports*, *Inc.*, 758 F.3d 493, 499 (2d Cir. 2014). Particularly, "[w]hen a subsequent action involves a claim over 'ongoing conduct' and it relies on facts that occurred both before and after the earlier action commenced, claim preclusion will not bar a suit . . . 'based upon legally significant acts occurring after the filing of a prior suit.'" *Id.* at 501.

New York Litigation 1 does not bar this action.  First, Justice Reed's December 21, 2021 lift of the stay on the enforcement of the November 2018 demand and in particular, his statement within that decision that there was no longer a good faith dispute over Defendant's authority, was not a final judgment on the merits.  Defendant concedes as much.  Memo at 23.  Defendant argues that while not a "final judgment," the decision may still preclude the Complaint here because it is a "prior adjudication of an issue in another action . . . to be accorded conclusive effect." *Id.*  The

December 21, 2021 decision, however, has not been accorded conclusive effect as the case is ongoing and the parties continue to litigate over the inspection of books and records and issues surrounding Defendant's authority.[5]   Indeed, Defendant has caused BPM to since file two additional orders to show cause to compel further productions of documents, claiming the Petition has not been satisfied and FinCo has raised several arguments as to why the continued prosecution of the action is unlawful in response.  *See* Schnapp Decl. ¶¶ 15, 20.

Furthermore, the claims at issue here could not have been brought within New York Litigation 1 as the underlying claims necessitate assessment of significant legal events which developed since the December 2021 decision in New York Litigation 1.  *See TechnoMarine SA*, 758 F.3d at 499; Ben Chekroun Decl. ¶¶ 9-22.

The Moroccan actions do not preclude this lawsuit based on claim preclusion.  None of the Moroccan actions, as Defendant inaccurately represents, involved a final adjudication on the merits of the question of Defendant's authority to act as CEO on behalf of BPM.  Memo at 23. The previous Moroccan actions involved questions of the validity of shareholder agreements (*see* Ben Chekroun Decl. ¶ 6) and the appointment of judicial administrators to convene an extraordinary general meeting of the BPM (*see* Ben Checkroun Decl. ¶ 16).  To the extent, the October 2021 litigation involves questions over Defendant's authority, that case is ongoing and was ongoing at the time this Complaint was filed.  *See* Ben Chekroun Decl. ¶ 15.  In a similar vein, the declaratory judgment and shareholder derivative actions could not have been brought in the previous Moroccan litigations which involved discrete issues as described above.  As such, claim preclusion does not apply to prevent the adjudication of this lawsuit.

---

[5] Defendant's reliance on *S.E.C. v. Haligiannis*, is misplaced.  In that case, the Court allowed a criminal judgment to be "final" even though the defendant had yet to be sentenced because the defendant had become a fugitive and there was no sentencing even possible at the time or in the near future.  *S.E.C. v. Haligiannis*, 470 F.Supp.2d 373, 383 n.8 (S.D.N.Y. 2007)

**B.  The Complaint Should Not Be Dismissed for Issue Preclusion**

Litigation is precluded when "(1) [an] identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 882 F.Supp.2d 396, 401 (E.D.N.Y. 2012).

Defendant claims that the issue of whether Defendant's term as CEO expired in December 2020 was previously raised and rejected in June 2022 in Moroccan Litigation 6.[6]  Memo at 22-23. However, Moroccan Litigation 6 was actually initiated in May 2022 for the appointment of a judicial administrator whose mission is to convene an extraordinary general meeting of BPM and the President of the Commercial Court of Casablanca rejected the request only due to the fact that a shareholder meeting had recently been held on December 31, 2021.   Ben Chekroun Decl. ¶ 17. The question of whether Defendant's term expired in December 2020 was never specifically addressed by the Moroccan court and there was no finding on that issue.  *Id* ¶¶ 17, 18.

Defendant also argues that the issue of Defendant's authority as CEO has already been litigated in New York Litigation 1 and that the specific question of whether Defendant's term expired in December 2020 should have been raised in that same litigation.  Memo at 23.  However, Defendant's emphasis on the expiration of his term in December 2020 is a red-herring.  Whether or not Defendant's term expired in 2020 is not "decisive" in this present action.  Since the state court's December 2021 decision in New York Litigation 1, there have been significant legal developments which very much demonstrate that there remains a dispute as to Defendant's

---

[6] Defendant also argues that Plaintiffs knew Defendant's term as CEO expired in December 2020 but failed to argue that issue in Moroccan Litigation 1, but this is similarly misleading because that argument could not have been made in that action.  Moroccan Litigation 1 was initiated in 2019 and was distinctly and solely concerning the validity of shareholder minutes and deliberations of the BPM shareholders' meeting on May 20, 2019.  *See* Ben Chekroun Decl. ¶¶ 5-6.

authority.  *See* Ben Chekroun Decl. ¶¶ 9-22.  Moreover, the decisive issues here are whether FinCo must continue to comply with demands for inspections as the circumstances stand today and whether Defendant breached his fiduciary duties to BPM and misappropriated corporate funds.[7]

## POINT VII

### THE FIRST FILED RULE DOES NOT APPLY TO THIS ACTION

Defendant additionally argues that the Morocco and New York State prior litigations were "first-filed" and Plaintiffs should be bound by those lawsuits.  Memo at 18-21.  This frivolous "first-filed rule" argument should be disregarded as it is well-established that this rule "permits the transfer or dismissal of subsequently commenced litigation involving the same parties and the same issues when both suits are pending in federal courts."  *Kytel Intern Grp., Inc. v. Rent A Ctr. Inc.*, 43 Fed.Appx. 420, 422 (2d Cir. 2002) (finding that "[b]ecause RAC's Texas action is in state court, it was error for the District Court to dismiss on the basis of the first filed rule").  Here, neither the Moroccan nor New York State litigations are federal actions and thus, the "first-filed rule" does not apply.[8]

## POINT VIII

### PLAINTIFFS' ALLEGATIONS ARE SUFFICIENT TO STATE A CLAIM

Defendant specifically argues FinCo's claim against Defendant is insufficient because it "alleges no statutory, common law, or contractual duty that Belmamoun owed Finco" and that the allegations "only involve duties of Belmamoun to BPM."  Memo at 27-28.  Defendant's assertion that FinCo must plead duties owed by Defendant to FinCo misses the mark and misconstrues the

---

[7] The three cases cited by Defendant for purported legal support do not even address issue preclusion, only *res judicata*, and, in any event, all involved claims which were unequivocally preceded by lawsuits brought to final conclusions, unlike New York Litigation 1.  *See Lipman v. Rodenbach*, 852 Fed.Appx. 578, 580-81 (2d Cir. 2021); *Kern v. Joyce*, 857 Fed.Appx. 691, 693 (2d Cir. 2021); *Doe v. Columbia Univ.*, 551 F.Supp.3d 433, 461 (S.D.N.Y. 2021).

[8] Defendant's cited cases to support his position are consistent with Plaintiffs' position as they all involve application of the "first-filed" rule in situations involving two concurrent federal actions.

allegations in the Complaint– the declaratory judgment action does not concern "duties," but requests declaratory relief regarding *FinCo's obligations* to hand documents over to Defendant, particularly when there is an outstanding dispute over Defendant's authority to represent BPM in making demands for inspection.

Defendant also argues that Shareholder Plaintiffs' claims are insufficiently pled because Shareholder Plaintiffs' examples of misappropriation lack specifics.  Memo at 28.  However, at the motion to dismiss stage, this Court is not engaged in an effort to determine the truth behind the alleged facts, only whether if the facts as pled, are plausibly sufficient to state a claim.  Here, Shareholder Plaintiffs sufficiently allege, amongst other indiscretions, that Defendant has: 1) instituted unauthorized legal actions on behalf of BPM causing waste of corporate assets and (2) improperly and unlawfully utilized BPM funds to purchase personal items and fund legal expenses, all of which causing injury to BPM.  Compl. ¶ 29, Exhibit 2.

Defendant also claims the Complaint's allegations concerning the vacancies in governance are insufficient because they have not adequately interpreted the Article of Association 14.2, because "Shareholder Plaintiffs' own acts" deprived BPM "of an officer to protect its interests," and because the Complaint fails to address prior Moroccan litigation.  Memo at 28.  Again, these arguments are merely a dispute over the accuracy of the facts alleged and do not establish their implausibility to state a legal claim.

Lastly, Defendant argues that the Complaint does not plead "fraudulent prosecution" with the requisite "particularity and detail."  Memo at 28-29.  At present, however, ***there are no causes of action for fraud in the Complaint***[9].  *See* Compl. ¶¶ 43-65.

---

[9] To the extent Defendant is referring to one portion of the claim for declaratory relief referencing "fraudulent prosecution," that is not a separate cause of action for fraud.  Compl. ¶ 46; Prayer for Relief.

## POINT IX

## PLAINTIFFS' CLAIMS ARE TIMELY

Defendant also argues that Plaintiffs' claims are barred by the applicable statute of limitations. Here, FinCo's declaratory judgment action is a claim arising from FinCo and BPM's asserted contractual relationship under the SPA, pursuant to which BPM may be entitled to certain information from FinCo. Compl. ¶ 30. Thus, a six-year statute of limitations applies to the declaratory judgment claim. *See e.g. Estate of Albin v. Mertz, LLC*, Case No. 05 Civ. 3440, 2006 WL 8461442, at *6 (S.D.N.Y. 2006) (applying six-year statute of limitations claim to declaratory judgment causes of action which arose from the parties' contractual relationship).

Defendant himself concedes that FinCo's remedy would lie in contract. *See* Memo at 27. ("FinCo's remedies, if any, lie against BPM for breach of the SPA"). Indeed, FinCo seeks declaration as to the enforceability of Defendant's requests on behalf of BPM for an unfettered inspection of books and records pursuant to the SPA – most recently made in February and March 2022 and which continue to be the subject of the ongoing New York Litigation 1. *See e.g.* Compl. ¶¶ 34, 46; Schnapp Decl. ¶¶ 15-20. As BPM made its first unauthorized demand for inspection in November 2018 (Schnapp Decl. ¶ 7), FinCo's claim is timely.

Defendant's claim that FinCo's declaratory judgment action is subject to a four-month statute of limitations pursuant to both New York BCL § 619 and CPLR 217 is inaccurate. New York's BCL § 619 governs the proceeding by which a shareholder may challenge a corporate election. *See* BCL§ 619; *see also Mobarek v. Mowad,* 117 A.D.3d 998, 1002 (2d Dep't 2014).

Case 1:22-cv-00952-DLC   Document 34   Filed 08/22/22   Page 30 of 37

Here, FinCo is not a shareholder of BPM and is not seeking to challenge a BPM election with its claim for declaratory relief[10].

Similarly, FinCo's claim for declaratory relief is not subject to the confines of CPLR 217 which requires that a proceeding "against a body or officer," or an Article 78 proceeding, must be brought within four months of the action challenged.  CPLR 217.  This federal action is appropriate because FinCo is seeking a declaration as to its obligations to grant Defendant access to its records – not, for example, as would be more akin to an Article 78 proceeding, such as seeking to compel BPM adhere with its bylaws.  Compl. ¶¶ 43-46; *see also Goldman v. White Plains Ctr. for Nursing Care, LLC*, 9 Misc.3d 977, 980 (Sup. Ct. N.Y. Cnty. 2005) (finding corporation "can be compelled in an Article 78 proceeding to fulfill . . . obligations imposed upon them . . . by their internal rules").[11]

Defendant also argues that Shareholder Plaintiffs' derivative causes of action are untimely because the applicable three year-statute of limitations to a breach of fiduciary duty has expired. As an initial matter, a six-year statute of limitations applies to breach of fiduciary duty and related claims when the "essence of the claims is not negligence" but rather allege "intentional acts." *Wimbledon Fin. Master Fund, Ltd. v. Hallac*, 192 A.D.3d 617, 618 (1st Dep't 2021); *see also Apollo Global Mgmt., Inc. v. Cernich*, Index No. 653234/2020, 2022 WL 2612429, at *2 (N.Y.

---

[10] As such, Defendant's legal support, *Cylich v. Riverbay Corp.*, 74 A.D.3d 646 (1st Dep't 2010) and *Scheeler v. Buffalo Wire Works Co., Inc.*, 50 Misc.2d 158 (Sup. Ct. Erie Cnty. 1966), which involve reviews of corporate election pursuant to BCL § 619, are inapplicable.

[11] For the same reasons, none of FinCo's other cited New York State case law is applicable as they involve Article 78 proceedings challenging company bylaws, corporate actions such as removal of directors at shareholder meetings, and shareholder disputes over an increase in an individual shareholder's voting power.

Sup. Ct. N.Y. Cnty. July 8, 2022) (applying six-year statute of limitations to breach of fiduciary duty claims that "sound primarily in fraud and fraudulent concealment").

Here, the six-year statute of limitations applies to Shareholder Plaintiffs' derivative causes of action because they in essence allege the type of "intentional," fraudulent actions on behalf of Defendant such as concealing his misuse of company funds and causing of BPM to make material misrepresentations to investors and potential partners. *See e.g.* Compl. ¶ 29.

Plaintiffs are in possession of copies of transaction demonstrating Defendant's misuse of BPM funds in 2016, 2017, and 2018. *See* Schnapp Decl. Exs. A-C.  The Complaint was filed on February 2, 2022 and thus, Shareholder Plaintiffs' derivative actions are timely as to all misuse that occurred since February 2, 2016.

However, even if this Court applies a three-year statute of limitations, Plaintiffs' derivative claims remain viable as they have reason to believe that Defendant caused the misuse of additional BPM funds through additional improper transactions in February 2019 to present.  Proof of these transactions is in the possession only of Defendant or third-parties which Plaintiffs may only attempt to access through issuing subpoenas.

## POINT X

## FINCO HAS STANDING TO BRING ITS DECLARATORY JUDGMENT ACTION

Defendant additionally argues for dismissal of FinCo's declaratory judgment action by claiming FinCo lacks standing to bring the action.   "Standing generally has two aspects: constitutional standing, a mandate of the case or controversy requirement in Article III . . . and prudential considerations of standing, which involve judicially self-imposed limits on the exercise of federal jurisdiction."  *United Steel Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 474 (2d Cir. 2013).  To satisfy constitutional standing requirements, "a plaintiff must prove: (1) injury in fact, which

must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kriesler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). The "prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014).

Here, FinCo has both constitutional and prudential standing.  First, FinCo satisfies all elements of constitutional standing.  FinCo has been embroiled in a state court action for the inspection of books and records initiated by Defendant on behalf of BPM since 2018, has already produced documents to satisfy the Petition in that action, and is currently litigating BPM's additional demands for inspection of books and records pursuant to the SPA.  Compl. ¶¶ 31-36.

Defendant claims FinCo has not alleged injury caused by Defendant's personal conduct. Memo at 26.  To the contrary, FinCo has pled that Defendant caused BPM to initiate the sham proceedings for the inspection of books and records, and also has caused BPM to continue to harass FinCo with demands for unfettered inspection of books and records still to date, despite the fact that Defendant lacks the authority to do so and FinCo has already made a production satisfying the underling petition in New York Litigation 1.  Compl. ¶ 31.  FinCo has expended significant resources defending itself in BPM's ongoing litigation.

Additionally, FinCo maintains prudential standing to bring its declaratory judgment action. FinCo asserts its *own right* to a declaratory judgment concerning its obligation to grant inspection to BPM, one of its investors, and which obligation is provided for under the SPA to which *FinCo is a party*.  *See e.g.* Compl. ¶¶ 30, 44.  Defendant baselessly argues that FinCo is a "third-party"

without standing, though also concedes, FinCo and BPM are in contractual privity as FinCo's "remedies, if any, lie against BPM for breach of the SPA."   Memo at 27.

Defendant also claims FinCo lacks prudential standing because it has not suffered a "direct injury" from Defendant.  Memo at 27.  Here, Defendant has acted in his individual capacity by causing BPM to demand books and records from FinCo pursuant to provisions of the SPA and continuing its unlawful and unauthorized litigation as against FinCo.  *See e.g.* Compl. ¶ 30-31. Defendant's actions cause direct harm to FinCo who has expended significant resources defending against the harassing demands and, if required to provide an inspection, will be putting itself at risk as Defendant will not maintain confidentiality.  *See* Compl. ¶ 36.

**POINT XI**

**THERE IS NO CONFLICT OF INTEREST BARRING PLAINTIFFS' CLAIMS**

Defendant also asserts Plaintiffs are improper plaintiffs because they have actual or potential conflicts of interest with the entity that they represent – BPM.  Memo at 25.  However, the Second Circuit has found that only "plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest." *Priestly v. Comrie*, Case No. 07 CV 1361, 2007 WL 4208592, at *5 (S.D.N.Y. Nov. 27, 2007).

Here, FinCo is not a shareholder of BPM and its declaratory judgment action is rooted in the party obligations pursuant to the SPA.  Compl. ¶ 30.   Distinctly, Shareholder Plaintiffs bring derivative actions on behalf of BPM (*see* Compl. ¶¶ 38-40; 47-65) but do not bring any direct claims.  *See e.g.*  *Tuscano v. Tuscano*, 403 F.Supp.2d 214, 223 (E.D.N.Y. 2005) (refusing to dismiss complaint on grounds of conflict of interest because shareholders brought derivative actions only).  Therefore, this doctrine neither applies to FinCo nor Shareholder Plaintiffs' claims.

Defendant's emphasis on other lawsuits in which Plaintiffs may be involved in (Memo at 25) is irrelevant to the conflict of interest analysis – what is relevant is whether Shareholder

Plaintiffs bring both direct and derivative claims in this specific underlying lawsuit, which they do not.   Furthermore, Defendant's argument that dismissal is warranted because Shareholder Plaintiffs' position is economically antagonistic to BPM because they are trying to "prevent BPM . . . from gaining access to FinCo's records" is similarly off point.  Memo at 25-26.  Only FinCo's cause of action seeks relief concerning BPM's access to FinCo's records – Shareholder Plaintiffs' focus is on the damage done to BPM such as waste of corporate assets.  As such, Defendant's attempt to have this matter dismissed due to a purported conflict of interests falls flat.[12]

**POINT XII**

**NEW YORK'S ANTI-SLAPP STATUTE DOES NOT BAR PLAINTIFFS' CLAIMS**

Defendant's arguments that New York's anti-SLAPP act bars Plaintiffs' Complaint fails to adequately appreciate both the application of anti-SLAPP in federal courts as well as its purpose.

Initially, Defendant recognizes that in a diversity action, New York federal courts will not apply the procedural provisions of a state anti-SLAPP act to the extent that they conflict with the Federal Rules of Civil Procedure.  Memo at 30; *see e.g. La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020) (finding "federal courts must apply [FRCP] 12 and 56 instead California's special motion to strike" within California's anti-SLAPP statute"); *National Academy of Television Arts and Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F.Supp.3d 408, 432 (S.D.N.Y. 2021) (finding "New York's anti-SLAPP law imposes a different, and higher, burden on the plaintiff at the pleading stage than the [FRCP]" and "as such, § 70-a is inapplicable in federal court").

Due to this obstacle, Defendant relies heavily on the premise that, while the Second Circuit may not apply the anti-SLAPP procedural provisions, the same courts have applied the *substantive* portions of New York's anti-SLAPP amendment, which he represents that this Court should rely

---

[12] In any event, Defendant has failed to seek relief pursuant to FRCP 23.1 which is the genesis of this conflict of interest doctrine.

on here in granting his motion to dismiss.  Memo at 30.  However, Defendant has failed to identify

under what substantive provision of the anti-SLAPP law he is basing his motion to dismiss, or to

explain how that substantive provision justifies outright dismissal of this action.  Furthermore,

Defendant cites no authority for dismissing this case under the anti-SLAPP statute in any regard.

In fact, New York federal courts' application of the "substantive" portions of the New York

anti-SLAPP law are irrelevant to this motion to dismiss.  For example, New York federal courts

have applied anti-SLAPP statute's substantive provision, CRL §76-a, which requires actual malice

to be proven when certain communications are at issue, such as those made in a place open to the

public or in a public form in connection with an issue of public interest.  *See e.g. Kesner v. Buhl*,

Case No. 20 Civ. 3454, 2022 WL718840, at *10 (S.D.N.Y. March 10, 2022) (permitting motion

for summary judgment on a libel claim on the grounds that the evidence did not rise to the standard

of "actual malice" based on the amendment to CRL §76-a); *see also Coleman v. Grand*, 523

F.Supp.3d 244, 257 (E.D.N.Y. 2021) (finding anti-SLAPP §76a to apply libel claim pursuant to

new standard that "requires [plaintiff] to show she acted with actual malice").[13]

Defendant's motion to dismiss pursuant to New York's anti-SLAPP statute is *not* based on

any substantive provisions in the statute, but rather the *procedural* portion of the statute which

provides the mechanism to move to dismiss under the statute.  In particular, under CRL § 70-a

(New York's amended anti-SLAPP law), a defendant may recover 'damages, including costs and

attorney's fees,' by bringing a special motion to dismiss pursuant to CPLR 3211(g)."  *National*

*Academy of Television Arts*, 551 F.Supp.3d at 430.  CPLR 3211(g)(i), "requires that a court grant

an anti-SLAPP law motion to dismiss unless the party responding to the motion demonstrates that

---

[13] There are no defamation or libel claims in this lawsuit that would even invoke an analysis over whether "actual malice" should be the standard under New York's anti-SLAPP statute.  Again, it is entirely unclear what substantive provision of New York's anti-SLAPP statute Defendant considers to be a proper basis for a motion to dismiss, likely, because there are none.

the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." *See Carroll v. Trump*, Case No. 20-CV-7311, 2022 WL 748128, at *6 (S.D.N.Y. March 11, 2022); CPLR 3211(g)(i).  This heightened pleading standard conflicts with FRCP 12 and thus, is rejected by New York federal courts.  *See e.g. Carroll*, 2022 WL 748128, at *7 ("Subdivisions 1 and 2 of CPLR 3211(g) . . . are inapplicable in federal court"); *National Academy of Television Arts*, 551 F.Supp.3d at 431 ("the 'substantial basis' standard articulated in New York's anti-SLAPP law similarly conflicts with the standards" of FRCP 12 and 56").  Thus, this Court should deny Defendant's motion to dismiss on this ground.

Yet, even if this Court determined it could procedurally apply New York's anti-SLAPP act, Defendant's prior action for the inspection of books and records is not the type of conduct that which anti-SLAPP act is meant to protect.[14]  Under the broadened language of New York's amended anti-SLAPP law, the statute applies to claims "based upon . . . the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition."  CRL §76-a.  Defendant argues that this instant lawsuit is based upon on BPM's exercise of its purported constitutional right in filing a lawsuit for the inspection of books and records, which is the "exercise of the constitutional right of petition."[15]  However, FinCo's lawsuit here for declaratory relief is not "based" on the fact that Defendant filed a lawsuit to inspect books and records – rather with its action, FinCo is seeking redress in light of the continued demands BPM issues and the questions surrounding Defendant's

---

[14] Defendant's reliance on numerous California state court decisions to demonstrate that Defendant's prior action is the type of action protected by New York's anti-SLAPP statute is befuddling – none of those California decisions involve New York's anti-SLAPP statute.

[15] Defendant cannot identify any New York cases, federal or otherwise, protecting a petition for books and records (or any similar type of litigation) as a "communication" within the New York anti-SLAPP statute.

authority to act on behalf of BPM.[16]  Additionally, Shareholder Plaintiffs' derivative claims are based on a significant number of actions that Defendant has caused BPM to take including mismanagement and looting of company funds – their claims are not based on any constitutional right to petition.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss the Verified Complaint, or, in the alternative, permit Plaintiffs to amend their Complaint as the Court deems necessary, together with such other and further relief as this Court deems proper.

Dated: August 22, 2022
New York, New York

**NIXON PEABODY LLP**

By: _____
        Daniel A. Schnapp, Esq.

55 West 46th Street
York, NY 10036-4120
Telephone: (212) 940-3000
dschnapp@nixonpeabody.com

*Attorneys for Plaintiffs*

---

[16] Defendant's attempt to compare this instant action to that of *Harris v. American Accounting Assoc.*, 2:20-CV-01057, 2021 WL 5505515 (N.D.N.Y. Nov. 23, 2021) is unpersuasive.  The *Harris* Court found New York's anti-SLAPP statute entitled the defendant to an award of costs and attorney's fees particularly because the at-issue conduct was "precisely the type of conduct against which New York's Anti-SLAPP statute was designed to protect" because prior to filing litigation, plaintiff sent emails to the defendants threatening to cost them millions of dollars in legal fees. *Harris*, 2021 WL 5505515, at *14.  There have been no such allegations here.