```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :    22cv952 (DLC)
FINCO PRIME CONSULTING CORPORATION,    :
et al.,                                :
                                       :    OPINION AND ORDER
                      Plaintiffs,      :
                                       :
               -v-                     :
                                       :
OMAR BELMAMOUN, et al.,                :
                                       :
                      Defendants.      :
                                       :
-------------------------------------- X
```

APPEARANCES:

For the plaintiffs:
Nixon Peabody LLP (NYC)
Daniel Adam Schnapp
55 West 46th Street
New York, NY 10036

For defendant Omar Belmamoun:
Golenbock Eiseman Assor Bell & Peskoe LLP
Michael S. Devorkin
711 Third Avenue, 17th Floor
New York, NY 10017

DENISE COTE, District Judge:

A Moroccan company, defendant Brookstone Partners Morocco S.A. ("BPM"), invested $4 million by 2015 in a New York company, plaintiff FinCo Prime Consulting Corporation ("FinCo"). In 2018, BPM sued FinCo in New York state court for access to financial records related to the investment. That litigation remains ongoing. Since 2019, the parties have engaged in litigation in Morocco, principally over whether defendant Omar

Belmamoun remains the lawful CEO of BPM and whether he has wrongfully used BPM funds. Then, in 2022, FinCo and certain BPM shareholders filed this action against Belmamoun, seeking to litigate in this forum as well whether Belmamoun remains BPM's CEO and whether he has misused corporate assets. Belmamoun has moved to dismiss the complaint on several grounds. For the reasons given below, this action is dismissed under the doctrine of <u>forum non conveniens</u>.

## Background

The following facts are taken from the complaint, documents integral to it or incorporated therein, and where appropriate, the parties' submissions on these motions. The Court also takes judicial notice of the existence of judicial decisions and other public filings submitted with Belmamoun's motion to dismiss.

The core of this action arises from a dispute between shareholders of BPM, a Moroccan company. Belmamoun is a shareholder of BPM and was appointed BPM's CEO and Chairman in 2014. Michael Toporek, who controls FinCo, is also a shareholder of BPM. BPM invested in FinCo in 2015. When BPM sought to enforce its right to examine FinCo's records pursuant to the Stock Purchase Agreement governing the investment ("SPA"), FinCo refused and has continued to resist BPM's efforts since 2018. Toporek and other BPM shareholders ("Toporek Shareholders") have commenced several actions -- all except two

are in Morocco -- with the goal of removing Belmamoun as CEO of BPM.  The instant case is one of those actions.

I.   BPM's Investment in FinCo and Request for Records

As noted, plaintiff FinCo is a New York corporation. Nominal defendant BPM is a Société Anonyme, a Joint Stock Company, formed under the laws of Morocco.  Belmamoun and Luminy Invest, Belmamoun's wife's company, control 50% of BPM ("Belmamoun Shareholders"), and the Toporek Shareholders -- plaintiffs Michael Toporek, Matthew Lipman, Sweatpea Ventures Inc., and MJT Park Investors ("MJT") -- control the other 50%. Belmamoun was appointed the Chairman and CEO of BPM on December 2, 2014.  Belmamoun resides in and is a citizen of Morocco.  In addition to Belmamoun, Luminy Invest is a director of BPM, and Toporek and Lipman were also directors until their resignations on April 8, 2019.

The relationships between Toporek and FinCo include the following.  Toporek is the managing general partner of Brookstone Partners, LLC ("Brookstone Partners").  Brookstone Partners employs the director of FinCo, Perry Jacobson, and owns MJT.

As a result of Toporek's request, BPM had invested $4 million in FinCo.  On January 6, 2015, FinCo and BPM executed the SPA to govern the investment.  Pursuant to the SPA, BPM has a right to inspect FinCo's financial records:

3

> [FinCo] shall permit [BPM] at such party's expense, to visit and inspect [FinCo's] properties, to examine its books of accounts and records and to discuss [FinCo's] affairs, finances, and accounts with its officers, all at such reasonable times as may be requested by [BPM.]

In 2018, after having not received any returns on BPM's investment in FinCo, BPM made a demand on FinCo to examine its financial records. After FinCo refused, BPM sued FinCo in New York state court in 2018 for access to financial records. On January 17, 2019, the New York court ruled in BPM's favor and ordered FinCo to give BPM access to the documents ("January 2019 Decision"). After unsuccessfully moving the Appellate Division for a stay of the January 2019 Decision, on April 19, FinCo moved to vacate the decision, and Toporek and Lipman applied for an order to show cause to intervene in the case, vacate the decision, and for a temporary stay. Toperek and Lipman resigned from the BPM board just weeks before that application.

The New York state court stayed the January 2019 Decision while it considered these motions. Before the court issued its decisions on the motions, the parties stipulated to adjourn the action due to "matters concerning control of [BPM that were] being actively litigated in courts in Morocco." The court adopted this stipulation on July 23, 2019.

II.  Litigation Over Control of BPM and Continuing Litigation over FinCo Records

Meanwhile, in Morocco, on June 25, 2019, the Belmamoun Shareholders filed a motion against the Toporek Shareholders before the Commercial Court of First Instance of Casablanca ("Commercial Court").  The motion sought to nullify a general meeting of BPM shareholders held on May 20, 2019 in which Toporek and Lipman attempted to remove Belmamoun as CEO of BPM.  The Commercial Court denied the motion on January 16, 2020.  On November 9, the Commercial Court of Appeal in Casablanca overturned the Commercial Court's decision and ordered that the general meeting at issue was null and void under Moroccan law.  On August 26, 2021, the President of the Commercial Court ordered the Commercial Court's Trade Registry[1] to correct its records to reflect that Belmamoun was the Chairman and CEO of BPM and that Luminy Invest was a member of the board of directors.  On September 27, 2021, the Trade Registry updated its records accordingly.

In another action in Morocco in 2019, the Toporek Shareholders sued Belmamoun in the Commercial Court seeking to appoint a legal administrator of BPM, alleging that Belmamoun

---

[1] The Trade Registry is an entity within the Commercial Court with which commercial companies in Morocco must register. Companies must submit records identifying their officers and board of directors' membership to the Trade Registry.

had abused corporate assets.  The Moroccan court denied the request on July 25, 2019, and the Commercial Court of Appeal affirmed the decision on January 14, 2020.

Following these developments in the Moroccan litigation, BPM returned to New York state court and moved on November 24, 2021 to lift the stay in the New York action.  FinCo opposed, citing the ongoing "significant litigations in Morocco".  On December 20, the New York state court lifted the stay, noting that there was "no longer a good faith dispute about whether or not [Belmamoun had] the authority to act as CEO on behalf of the interests of [BPM]."

FinCo produced documents on December 27, but BPM asserted that the documents did not include any information about BPM's investment and other records specified in the SPA.  BPM made more demands, which FinCo refused, and, on February 1 and June 22, 2022, BPM filed applications in state court to enforce its rights under the SPA.  The New York court has yet to issue a decision on the June 2022 application for an order to show cause.

In addition to the New York State court litigation over access to FinCo's records, starting in 2021, the parties have been litigating in Morocco and New York state court over whether Belmamoun's term as CEO expired as of December 2, 2020.  The Toporek Shareholders (or those associated with them) have filed

five cases in Morocco and one in New York state court challenging Belmamoun's control of BPM.

First, in Morocco, on October 13, 2021, the Toporek Shareholders commenced an action in the Commercial Court asking the court to rule that Belmamoun's term as CEO had expired and to amend the Trade Registry accordingly.[2] Then, on February 18, 2022, the Toporek Shareholders filed an action in New York state court against Belmamoun, BPM's New York law firm, and the assistant general manager of BPM, alleging that Belmamoun's law firm was not lawfully retained by BPM because Belmamoun was not authorized to retain the firm on behalf of BPM. This litigation in state court is ongoing.

Back in Morocco, in May 2022, the Toporek Shareholders commenced proceedings before the President of the Commercial Court to appoint a judicial administrator to convene a general meeting of BPM. This application was rejected. Next, on August 3, 2022, the Toporek Shareholders brought a proceeding in Morocco requesting the court to designate a court-appointed

---

[2] In letters filed on December 27, 2022 and January 3, 2023 in the instant action, Belmamoun gave notice of a Moroccan Commercial Court decision of December 12, 2022 dismissing the October 13, 2021 action. The plaintiffs dispute the significance of the ruling.

receiver for the administration of BPM.  It appears that this request has been rejected.³

Lastly, Toporek has brought two criminal actions in Morocco against Belmamoun.  These actions allege, as here, that Belmamoun misappropriated BPM funds.  One complaint was found inadmissible, and the other remains pending.

III. The Instant Action

FinCo and Toporek Shareholders filed this action on February 2, 2022.  Their complaint, like the pleadings they have filed in New York state court and Moroccan courts, alleges that Belmamoun has not been the lawful CEO of BPM since December 2, 2020, and therefore all actions taken by Belmamoun on behalf of BPM after that date have been unauthorized.  Their complaint also repeats allegations that Belmamoun has used BPM corporate funds for his personal interests rather than the corporation's.  For example, it asserts that Belmamoun has used BPM funds for personal expenses; has wrongfully brought legal actions individually and on behalf of BPM; and has withheld BPM bank records and financial statements from BPM shareholders.

---

³ On October 21, 2022, Belmamoun sought to file in the instant action a September 14, 2022 decision from the President of the Commercial Court in which the court rejected the Toporek Shareholders' August 3 application.  The plaintiffs dispute Belmamoun's characterization of the September 14, 2022 decision.

The plaintiffs seek a declaratory judgment that, among other things, Belmamoun has not been the lawful CEO of BPM since December 2, 2020, that FinCo is not required to comply with demands for documents made by Belmamoun, and that Belmamoun must reimburse FinCo for FinCo's legal expenses stemming from the New York state court action brought by BPM.  The Toporek Shareholders bring causes of action for breach of fiduciary duty, abuse of control, waste of corporate assets, and an accounting.[4]

On August 1, 2022, Belmamoun has moved to dismiss the complaint on several grounds, including lack of personal jurisdiction, under the doctrine of forum non conveniens, and FinCo's lack of standing.  The motion became fully submitted on September 6.  For the following reasons, this action is dismissed based on the doctrine of forum non conveniens.[5]

---

[4] On June 22, this Court held that subject matter jurisdiction exists on the basis of diversity.  FinCo Prime Consulting Corp. v. Belmamoun, No. 22cv952 (DLC), 2022 WL 2237445, at *2 (S.D.N.Y. June 22, 2022).

[5] "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (citation omitted).  Accordingly, "a district court may dismiss on forum non conveniens without first deciding" other threshold questions.  United States ex rel. Hanks v. United States, 961 F.3d 131, 137 (2d Cir. 2020).

## Discussion

"The doctrine of forum non conveniens allows a district court to refuse to entertain jurisdiction of a case" in favor of a foreign country's courts "when doing so would best serve the convenience of the parties and the ends of justice." Gross v. Brit. Broad. Corp., 386 F.3d 224, 229 (2d Cir. 2004) (quoting Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 527 (1947)). A district court maintains "broad discretion" in determining whether to dismiss a case on the basis of forum non conveniens. Bigio v. Coca-Cola Co., 448 F.3d 176, 179 (2d Cir. 2006).

When dismissing a case on forum non conveniens, courts in the Second Circuit employ a three-step process. "[F]irst, the court determines the degree of deference properly accorded the plaintiff's choice of forum; second, it assesses the adequacy of the defendant's proposed alternative forum; and third, it weighs the private and public interests implicated in the choice of forum." Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp., 40 F.4th 56, 71 (2d Cir. 2022) (citation omitted). Each element is addressed in turn.

I.  Deference to Plaintiffs' Choice of Forum

"Any review of a forum non conveniens motion starts with a strong presumption in favor of the plaintiff's choice of forum." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 154

(2d Cir. 2005) (citation omitted). But that strong presumption does not amount to absolute deference to the plaintiff's choice. Instead, "the degree of deference given to a plaintiff's forum choice varies with the circumstances," Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir. 2001), and "moves on a sliding scale depending on the degree of convenience reflected by the choice in a given case," Norex, 416 F.3d at 154 (citation omitted).

Generally, when "the plaintiff[] or the lawsuit[]" has a substantial "bona fide connection to the United States" and "considerations of convenience favor the conduct of the lawsuit in the United States," it will be "difficult . . . for the defendant to gain dismissal for forum non conveniens." Iragorri, 274 F.3d at 72. In order to assess whether "considerations of convenience" favor litigating in an American forum, courts are instructed to look to

> the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense.

Id. By contrast, when "it appears that the plaintiff's choice of a U.S. forum" was motivated by "attempts to win a tactical advantage," it becomes "easier . . . for the defendant to succeed on a forum non conveniens motion." Id.

Here, the plaintiffs' choice of forum is entitled to deference, but not strong deference. The plaintiffs are New York citizens, but this action largely stems from their roles as either shareholders in a Moroccan entity or a recipient of an investment from a Moroccan entity. They seek to change the governance structure of that Moroccan entity. Reflecting the strong connection to Morocco, the plaintiffs have brought six actions in Morocco raising essentially the same issues they seek to litigate here. The fact that they have largely failed to prevail in their Moroccan actions does not mean that a New York forum is appropriate. Rather, it supports Belmamoun's contention that the plaintiffs are engaged in forum shopping. Further, Belmamoun is a Moroccan citizen, and BPM is a Moroccan company. Many if not most of the witnesses and evidence relating to actions taken by Belmamoun on behalf of BPM will be found in Morocco, not New York.

The plaintiffs argue that any witnesses in Morocco will be readily available to testify in New York and that any evidence in Morocco will be easily accessible here. Even if this were case, the fact that the witnesses and evidence are in Morocco tilts the "considerations of convenience" analysis against litigating this dispute in this country.

Finally, the plaintiffs assert that the Moroccan actions are distinct from those raised in this case. This lawsuit

raises issues of corporate governance in connection with a Moroccan company. Through this action, the plaintiffs seek to effect the removal of Belmamoun as BPM's CEO and a determination that he has abused his corporate office by diverting corporate funds. Whether the pleadings in each of the related actions bear the same labels, the issues at stake here are the same issues the plaintiffs have sought to litigate in Morocco. Accordingly, the plaintiffs' choice of forum is entitled to deference, but not strong deference.

II. Adequacy of an Alternative Forum

"An alternative forum is adequate [1] if the defendants are amenable to service of process there, and [2] if it permits litigation of the subject matter of the dispute." Aenergy, S.A. v. Republic of Angola, 31 F.4th 119, 130 (2d Cir. 2022) (citation omitted). For an alternative forum to be adequate, it need not offer either "the identical cause of action" that the plaintiffs intend to pursue in the U.S. forum, or "identical remedies." Norex, 416 F.3d at 158 (citation omitted). Morocco is an adequate forum for this litigation, and the plaintiffs do not suggest otherwise.

III. Private and Public Interest Factors

At the final stage of the forum non conveniens analysis, a court must consider whether the applicable private and public interest factors support dismissal. Private interest factors

13

relate to "the convenience of the litigants." Iragorri, 274 F.3d at 73. They include "the relative ease of access to sources of proof," the ability to obtain witnesses, "and all other practical problems that make trial of a case easy, expeditious and inexpensive." Aenergy, S.A., 31 F.4th at 132-33 (citation omitted). Public interest factors include "administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law." Id. at 133 (citation omitted).

The private interest factors favor dismissal. Belmamoun and BPM are in Morocco, and, as previously stated, the witnesses and evidence will be more easily accessible in Morocco. Furthermore, this litigation would entail significant foreign discovery that would make trial in this district more expensive. The plaintiffs' assertion that the plaintiffs' witnesses will be available in New York and that the plaintiffs' evidence is available here does not shift the balance of the private interest factors in their favor.

The public interest factors strongly favor dismissal. Questions of foreign law will be significant in this litigation. Whether Belmamoun is the lawful CEO of BPM is governed by

14

Moroccan law and has been and is being litigated in Morocco. Additionally, the Toporek Shareholders' claims regarding corporate governance and misuse of corporate funds will in all likelihood be decided under Moroccan law pursuant to New York's choice of law rules. Kinsey v. N.Y. Times Co., 991 F.3d 171, 176 (2d Cir. 2021). Under New York law, if there is an actual conflict between the jurisdictions' rules, then "[i]n tort cases, New York applies the law of the state with the most significant interest in the litigation." Id. (citation omitted). While the parties disagree whether Moroccan or New York law would apply to the Toporek Shareholders' tort claims, this dispute in and of itself weighs in favor of dismissal. The public interest factors "point towards dismissal where the court would be required to untangle problems in conflict of laws, and in law foreign to itself." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 251 (1981) (citation omitted).

Finally, although the plaintiffs reside in New York and BPM has a contractual relationship with FinCo, the connection to New York is minimal. New York has almost no interest in deciding whether Belmamoun has been the legitimate CEO of a Moroccan company since 2020. While the plaintiffs have argued that the application of foreign law does not favor dismissal, they have not otherwise identified how the public interest factors weigh against dismissal. Weighing each of the relevant factors, and

giving deference to the plaintiffs' choice of forum, the defendant has shown that his motion to dismiss under the doctrine of forum non conveniens should be granted.

## Conclusion

Belmamoun's August 1 motion to dismiss on the grounds of forum non conveniens is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:   New York, New York
         February 3, 2023

                                              _____
                                                    DENISE COTE
                                              United States District Judge